QUESTION:
Do `telephone solicitations' made by business concerns qualify as `home solicitation sales' as defined in s. 501.021, F. S.?
The recording of conversations between telephone solicitors and customers by telephone solicitors without the consent of the customer violates s. 934.03, F. S.
Threatening telephone calls made by business concerns to contracting consumers to the effect that their `credit rating will be ruined' and that, should the case go to court, they will `automatically lose' are acts and practices that violate s. 5 of the Federal Trade Commission Act and s. 501.204, F. S., which prohibit unfair and deceptive acts and practices in the conduct of any trade or business. These practices are also in violation of part V, Ch. 559, F. S., entitled `Consumer Collection Practices.'
SUMMARY:
`Telephone solicitations' made by business concerns do not qualify as `home solicitation sales' as defined in s. 501.021, F. S.
Your question is answered in the negative for the reasons set forth below.
In AGO 070-139, my predecessor opined that telephone solicitation sales do not qualify as home solicitation sales because:
 Section 501.025, F. S., provides that the buyer's rights arise when `the buyer signs an agreement or offer to purchase. . . .' (Emphasis supplied.) Section 501.031, F. S., provides that the `sale shall be evidenced by a writing. . . . The seller must obtain from the buyer his signature to a written agreement or offer to purchase. . . .' The solicitation, offer, and acceptance via telephone is necessarily an oral contract. The buyer's rights under the act only exist when there is a signed contract. Therefore, because of physical impossibility, this act does not apply to sales via telephone.
I further clarified this question in AGO 075-31, reasoning that central to the definition of a home solicitation sale is `personal solicitation.' The opinion specifically states as follows:
 The dominant characteristic of a home solicitation sale is personal contact between the seller and the buyer at a place other than the seller's business. It is that person-to-person
contact that is being defined by the word `personal.' (Emphasis supplied.)
The above-cited opinions are consistent with the Trade Regulation Rules promulgated by the Federal Trade Commission relating to the cooling-off period for door-to-door sales (16 C.F.R. § 429.1). This rule explicitly excepts from home solicitation sales those sales conducted and consummated entirely by mail or telephone and without any other contact between the buyer and seller or its representatives prior to delivery of the goods or performance of the services.
The factual basis for your inquiry involves situations wherein consumers are contacted by telephone at home and offered a particular product or service. Should be consumer accept, a verification call is placed by the company and tape recorded as `proof' of such acceptance. Shortly thereafter, the consumer receives a payment booklet and begins making payments. Subsequently, if problems occur and the consumer wishes to cancel, the company uses the tape-recorded telephone conversation as `leverage' to force the individual to continue making payments. Often, when further payments are not received, the consumer receives dunning letters and threatening telephone calls to the effect that his `credit rating will be ruined' and that, should the case go to court, he will `automatically lose.' Throughout the entire transaction, the consumer is not provided an opportunity to sign a written contract.
The above acts and practices come within the proscription of s. 5 of the Federal Trade Commission Act and s. 501.204, F. S., which prohibits unfair and deceptive acts and practices in the conduct of any trade or business, for such telephone solicitations are misleading in themselves. Furthermore, these collection efforts are deceptive and in violation of Ch. 501, F. S., in addition to the Guides Against Debt Collection Deception promulgated by the Federal Trade Commission (16 C.F.R. § 237). Under these guides, any person or organization attempting to collect money debts for itself or others `shall not use deceptive representation or deceptive means to collect or attempt to collect debts or to obtain information concerning debtors' 16 C.F.R. § 237.1). The practices you have described also violate certain provisions of part V, Ch. 559, F. S., entitled `Consumer Collection Practices.' The prohibited practices specifically outlined in s. 559.72 apply to any `person'; and `person' has been held to mean persons generally and not just collection agencies. Cook v. Blazer Financial Services, Inc., 332 So.2d 677 (1 D.C.A. Fla., 1976).
Although not specifically asked, the background situation you have presented raises the question of whether telephone solicitations where the seller records the consumer's acceptance, apparently without the knowledge or consent of the consumer, violate the `Security of Communications' provisions of Ch. 934, F. S. This question is answered in the affirmative for the reasons set forth below.
In State v. News Press Publishing Co., 338 So.2d 1313 (2 D.C.A. Fla., 1976), the court, in discussing Florida's `Security of Communications Act,' noted that, effective October 1, 1974, s.934.03(2)(d), F. S., was amended to prohibit a party to a conversation from recording the conversation without the consent of all parties to the same, provided the conversation is not public as provided by s. 934.02(2) or the intercept is not conducted for the purpose of obtaining evidence of a criminal act under s. 934.03(2)(c). The court observed that this amendment to s. 934.03 strongly implied `. . . that the legislature intended to allow each party to a conversation to have an expectation of privacy from interception by the other party.' State v. News Press Publishing Co., supra at 1316. This requirement, of course, differs from that contained in the Omnibus Crime Control Act of 1968, 18 U.S.C. § 32510, et seq., the federal counterpart to the Florida intercept law, which has been interpreted to mean that if one of the parties to a conversation is engaged in recording the same, an illegal intercept cannot be said to have occurred. United States v. Turk, 526 F.2d 654 (5th Cir. 1976); Smith v. Wenker,356 F. Supp. 44 (S.D.Ohio 1972).
Similarly, in AGO 076-195 this office advised a police chief that the monitoring or recording of conversations on department-owned telephones pursuant to a police regulation known to all members and employees of the police department violated s. 934.07, F. S., since it did not remove the expectations of privacy of individuals placing calls into the department under certain circumstances described therein. It was suggested that, prior to any recording or monitoring, a system be utilized whereby, prior to the conversation, the party on the line who did not have knowledge of the monitoring be informed of this fact so that if the conversation began, consent to monitoring, either express or implied, had been given by each party, thus complying with s.934.03, F. S.
Accordingly, the procedure outlined in your letter whereby telephone solicitation companies record verification calls without the consent of the consumer violates s. 934.03, F. S.
Prepared by: Bernard S. McLendon Assistant Attorney General Laura Bamond Legal Intern