338 So.2d 1313 (1976)
STATE of Florida, Appellant,
v.
NEWS-PRESS PUBLISHING COMPANY, a/k/a Fort Myers News-Press, a Gannett Newspaper, Appellee.
No. 75-1815.
District Court of Appeal of Florida, Second District.
November 5, 1976.
Rehearing Denied December 1, 1976.
*1314 Joseph P. D'Alessandro, State Atty., Louis S. St. Laurent, Chief Asst. State Atty., and James R. Thompson, Asst. State Atty., Fort Myers, for appellant.
Theodore Klein, Fine, Jacobson, Block, Goldberg & Semet, P.A., and Dan Paul, Paul & Thomson, Miami, for appellee.
GRIMES, Judge.
The state appeals an order dismissing an indictment charging the Fort Myers News-Press with tampering with physical evidence by destroying certain tape recordings of conversations for the purpose of impairing their availability in an investigation into the death of James O'Neill by the Lee County Sheriff's Department. The statute which the News-Press was charged with violating reads as follows:
"918.13 Tampering with or fabricating physical evidence. 
(1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
(a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation; or * * *"
The News-Press filed a sworn motion to dismiss pursuant to Fla.R.Cr.P. 3.190(c)(4) setting forth essentially the following facts:
Fran Williams was employed as a newspaper reporter by the Fort Myers News-Press at all times pertinent to the indictment. On October 8, 1974, she testified under subpoena before the State Attorney's office. She was advised by the State Attorney that her testimony was being compelled in exchange for her being granted immunity from the prosecution for the matter and/or transaction about which her testimony was being compelled. Ms. Williams testified that she first became aware of the homicide involving James O'Neill on September 28, 1974. On October 1, she received a telephone call from Margie Johnson who had been living at O'Neill's house prior to his death. Ms. Williams tape recorded this telephone conversation. Ms. Johnson was *1315 not aware that the conversation was being taped and did not give her permission for it to be taped. Ms. Williams asserted that she used the tape recording solely for the purpose of assisting her in writing her news story and then erased it according to the newspaper's policy to erase and reuse tapes.
Two days later, Ms. Williams picked up Ms. Johnson's daughter, Lori Sievert, and drove her to Punta Gorda where they met Ms. Johnson. Ms. Sievert told Ms. Williams that she wanted to talk with Ms. Johnson alone for a few minutes. Thereupon, Ms. Williams stepped out of the car, but unknown to Johnson and Sievert turned on a tape recorder which she had left in the car. The conversation of Johnson and Sievert was tape recorded without the knowledge and permission of either of them. Ms. Williams said that after returning to the newspaper office and writing her story, she also erased this tape.
The state filed a sworn demurrer and traverse to the foregoing motion to dismiss. Following a hearing, the court entered an order dismissing the indictment. First, the court reasoned that the News-Press could not have been guilty of destroying evidence, because the tape recordings were illegal intercepts which were inadmissible in evidence in any proceeding under Section 934.06, Florida Statutes (1973). The court further held that the traverse filed by the state was legally insufficient to deny the truth of any of the facts stated in the defendant's motion and that these facts, thereby undisputed, did not establish a prima facie case of guilt.
We will consider in turn the two bases for the court's order. At the outset, we note the anomalous situation in which the state contends that at least one of the intercepts was not illegal, whereas the defendant contends that both of them were illegal. Both parties agree that the tape recording of the conversation between Ms. Sievert and Ms. Johnson made without their knowledge and permission while Ms. Williams was out of the car was illegal under Chapter 934, Florida Statutes. However, the state argues that the tape recording of the telephone conversation between Ms. Williams and Ms. Sievert was not illegal because there could not be an intercept of a conversation where one of the parties to the conversation is causing it to be recorded. The following statutory definitions are pertinent to this discussion:
"934.02 Definitions.  As used in this chapter:
* * * * * *
(2) `Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting;
(3) `Intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device; * * *"
The Florida Security of Communications Act was patterned after Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510, etc. When first enacted, the Florida act, like its federal counterpart, also contained the following provision:
"It is not unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act." Section 934.03(2)(d).
Federal court decisions have interpreted this provision to mean that if one of the parties to a conversation is engaged in recording it, there is no illegal intercept. United States v. Turk, 526 F.2d 654 (5th Cir.1976); Smith v. Wunker, 356 F. Supp. 44 (S.D.Ohio 1972). However, effective October 1, 1974 (the very day on which Ms. Williams made the first tape recording), *1316 Section 934.03(2)(d), Florida Statutes, was amended to read:
"It is lawful under this chapter for a person to intercept a wire or oral communication when all of the parties to the communication have given prior consent to such interception."
The federal act has not been so amended. The fact that the provision permitting an intercept with the consent of one of the parties was changed in favor of a provision specifying that the consent of both parties is required strongly implies that the legislature intended to allow each party to a conversation to have an expectation of privacy from interception by the other party. This conclusion is fortified by the fact that at the same time Section 934.03(2)(d) was amended, the words "and does not mean any public oral communication uttered at a public meeting," were added to the definition of "oral communication" in Section 934.02(2). We, therefore, hold that the Florida Security of Communications Act prohibits a party to a conversation from recording this conversation without the consent of all parties to the conversation, provided the conversation is not public as provided by Section 934.02(2) or the intercept is not conducted for the purpose of obtaining evidence of a criminal act under Section 934.03(2)(c). The Federal District Court for the Southern District of Florida has recently interpreted this statute in a similar fashion. Sunbeam Television Corp. v. Shevin (S.D.Fla. 1976) (Case No. 75-1443-Civ-CA).
Since both of the tape recordings obtained by Ms. Williams were illegal intercepts, it becomes necessary to decide whether this defendant has standing to complain. The News-Press relies upon Section 934.06, Florida Statutes (1973) which reads:
"934.06 Prohibition of use as evidence of intercepted wire or oral communications.  Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter."
On the other hand, Section 934.09(9)(a), Florida Statutes (1973) provides that any "aggrieved person" may move to suppress an unlawful intercept, and Section 934.02(9), Florida Statutes (1973) defines an "aggrieved person" as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." Despite the broad language of Section 934.06, Florida Statutes (1973), our Supreme Court in the case of In re Grand Jury Investigation, 287 So.2d 43 (Fla. 1973), appeared to hold that only an aggrieved person had standing to complain of an illegal intercept, and the federal decisions construing similar provisions of the federal act have clearly so held.
In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the United States Supreme Court held that a person only had standing to complain on Fourth Amendment grounds if he was involved in unlawfully overheard conversations or the conversations occurred on his premises regardless of whether he was present or participated in those conversations. This decision, while rendered in 1969, was predicated upon law which predated the passage of the federal act upon which Florida's Chapter 934 was based. The Supreme Court went on to say that Congress or state legislatures could extend the exclusionary rule and provide that illegally seized evidence is inadmissible against anyone for any purpose but stated in a footnote to this observation:
"9. Congress has not done so. In its recent wiretapping and eavesdropping legislation, Congress has provided only that an `aggrieved person' may move to suppress the contents of a wire or oral communication intercepted in violation of the Act. Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 221 (18 U.S.C. § 2518(10)(a) *1317 (1964 ed., Supp. IV)). The Act's legislative history indicates that `aggrieved person,' the limiting phrase currently found in Fed.Rule Crim. Proc. 41(e), should be construed in accordance with existent standing rules. See S.Rep.No. 1097, 90th Cong., 2d Sess., at 91, 106."
In two recent cases the Fifth Circuit Court of Appeals had occasion to consider the question of standing under Title III of the federal act. Thus, in United States v. Scasino, 513 F.2d 47 (5th Cir.1975), that court said:
"In the circumstances of this case the defendants clearly cannot be considered aggrieved persons within the meaning of the statute. The Supreme Court in Alderman v. United States, 1968, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, has read the legislative history of the wiretap statute as intending the statute to reflect the existing law of standing in wiretap cases. See also United States v. King, 9 Cir.1973, 478 F.2d 494, 506; United States v. Ahmad, M.D.Pa. 1972, 347 F. Supp. 912, 933, aff'd in part, rev'd in part on other grounds, 3 Cir.1973, 482 F.2d 171. Under prestatutory fourth amendment law, one does not have standing to suppress an illegal wiretap unless his conversations were overheard or the conversations occurred on his premises. Alderman, supra, 394 U.S. at 176, 89 S.Ct. 961. See also Goldstein v. United States, 1941, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Kane, 5 Cir.1971, 450 F.2d 77.
"Consequently, under 18 U.S.C.A. § 2510(11) an `aggrieved person' is one who participated in the intercepted conversation or on whose premises the conversation occurred... ."
In United States v. Houltin, 525 F.2d 943 (5th Cir.1976), the court held that even though the arrest of certain defendants and the seizure of marijuana were fruits of illegal wiretaps, only those defendants who had a reasonable expectation of privacy in the wiretapped conversations had standing to complain. Thus, the court held that those who were not participants in the intercepted conversations and who did not own the property on which any party to the intercepted calls was speaking from had no standing to challenge the legality of the wiretap. In a footnote to that decision, the court said:
"3. According to Fed.R.Crim.P. 41(e) and 18 U.S.C. § 2518 (10)(a), an `aggrieved person' may move to suppress evidence derived from an illegal wiretap. The statutory phrase does not liberalize the common law of standing. See United States v. Calandra, 1974, 414 U.S. 338, 348, n. 6, 94 S.Ct. 613, 38 L.Ed.2d 561. That phrase is defined in 18 U.S.C. § 2510(11) as `a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed'. Moreover, in Alderman, 394 U.S. at 175, n. 9, 89 S.Ct. at 968, the Court held that `"aggrieved person" . . should be construed in accordance with existent standing rules'."
Since the defendant in its brief concedes that its contention of standing does not derive from Section 934.09(9)(a), Florida Statutes, our discussion of this point could stop here. However, we think it advisable to at least consider whether the defendant would have a right of suppression upon the authority of the federal interpretations because one of the intercepted conversations occurred when Ms. Williams was speaking from the News-Press office, and the state is attempting to impose criminal responsibility upon the News-Press predicated primarily upon the actions of its employee, Ms. Williams, who was a participant in that conversation. Suffice it to say, we think the purpose of Chapter 934 was to protect the victims of illegal intercepts, not those who perpetrate them. We cannot believe that the legislature intended this law to be interpreted in such a manner as to permit a person to make an illegal tape recording and then rely upon the evidentiary prohibitions of Section 934.06, Florida Statutes, to make his own determination that it would be inadmissible so that he can then destroy *1318 it. Thus, we cannot agree that the circumstances reflected by this record would not permit a prosecution for destruction of evidence.
This then brings us to the other ground upon which the indictment was dismissed. Among the averments of the defendant's motion to dismiss were the statements that Ms. Williams told the State Attorney that the tape recordings were erased pursuant to a standard policy of the newspaper to erase and reuse tapes. Another paragraph of the defendant's motion to dismiss read as follows:
"11. LT. SCHMIDT testified on deposition that he has no information or evidence that FRAN WILLIAMS destroyed subject tapes with the purpose of impairing their availability in any investigation.
"12. The State has no other testimony from any other individual, nor does it have any physical evidence within its knowledge or possession that the Defendant corporation by and through its agents destroyed the subject tapes with the purpose of impairing their availability in any investigation. LT. SCHMIDT, the chief investigating officer in this case, testified as follows:
Q. Did you ever come up with any evidence other than the fact that the tape recordings used by the Fort Myers News-Press were as a matter of course of business used over and over and erased and erased?
A. Yes.
Q. What?
A. From evidence we took from several of the people it was the News-Press's policy not to try to file and keep tape recordings, and that they were reused as a policy. That's basically all I know of why they reused them."
These statements were pertinent to the prosecution of this case because the gravamen of Section 918.13, Florida Statutes, is the destruction of evidence with the purpose of impairing its availability in a law enforcement investigation. In its traverse the state admitted a number of the facts set forth. With respect to the balance, including the statements that the tapes were erased as a matter of business policy in the normal course of business and the testimony attributed to Lt. Schmidt, the traverse stated:
"The STATE OF FLORIDA, by the undersigned, pursuant to CrPR 3.190(d) in further response to the Defendant's Motion to Dismiss, files this Traverse and specifically denies that on points 3b, 3c, 3d, 3e, 3h, 3k, 3l, 6, 7, 8, 9, 12, 13 and 14 there are no material disputed facts and that the undisputed facts in this case do not establish a prima facie case of guilt against the Defendant."
Giving the state the benefit of its double negative, we construe this to mean that there are some material disputed facts in the enumerated points (paragraphs) and that the facts contained in the motion which are undisputed do not establish a prima facie case of guilt. However, conspicuously absent from this traverse is any recitation of what facts in any of the paragraphs are denied.
Fla.R.Cr.P. 3.190(d) states in part:
"(d) Traverse or Demurrer. The State may traverse or demur to a motion to dismiss which alleges factual matters. Factual matters alleged in a motion to dismiss shall be deemed admitted unless specifically denied by the State in such traverse... ."
This rule does not require the state to allege any facts which negate the factual matters set forth in the motion to dismiss, nor must the State Attorney have personal knowledge of the facts in order to make a sworn denial. State v. Hamlin, 306 So.2d 150 (Fla. 4th DCA 1975). Nevertheless, any facts stated in a motion to dismiss filed under Fla.R.Cr.P. 3.190(c)(4) are deemed admitted unless they are specifically denied. The state's traverse in this case could hardly be construed as a denial of all of the facts under the enumerated paragraphs, particularly when it is noted that some of these paragraphs include statements of fact which the state itself contends to be true.
Thus, as we construe the rule the statements that the tape recordings were *1319 erased in order that they could be reused in accordance with the usual business practice of the newspaper stands undisputed. This is consistent with the balance of the record from which it may be inferred that it was not until the tapes were erased (and presumably certain news articles appeared which contained information unknown to the police), that the state made any overtures to Ms. Williams or the News-Press concerning its investigation of Mr. O'Neill's murder. Considered together, these facts negate the charge that the tapes were destroyed for the purpose of impairing their availability in the investigation. Of course, the mere fact that a person was following a standard policy would not necessarily be a defense to a charge of destruction of evidence. If he had the knowledge of a criminal trial, proceeding or investigation as set forth in Section 918.13, Florida Statutes, and the knowledge that the materials destroyed were likely to be evidence, then that person might have the required purpose to impair their availability solely by knowing that his act would have that result.
Here, however, we do not believe that Ms. Williams would be expected to think that these tape recordings could be evidence, in the same sense as, for example, a murder weapon. Nor do we think that she could be presumed to have the purpose to destroy evidence when she merely reuses a tape pursuant to routine procedure. The fact of the destruction, standing alone, under the circumstances here would not be sufficient to support a guilty verdict. Given the record before us that the state has no evidence which points to an improper purpose in erasing the tapes, we are compelled to find that the uncontroverted facts would be insufficient to support a conviction, and that the indictment was properly dismissed. Camp v. State, 293 So.2d 114 (Fla. 4th DCA 1974).
AFFIRMED.
BOARDMAN, Acting C.J., and SCHEB, J., concur.