394 So.2d 418 (1981)
STATE of Florida, Petitioner,
v.
Louis J. TSAVARIS, Respondent.
No. 59098.
Supreme Court of Florida.
February 12, 1981.
Rehearing Denied March 18, 1981.
*420 Jim Smith, Atty. Gen., and Peggy A. Quince, Asst. Atty. Gen., Tampa, for petitioner.
Gerald C. Surfus of Lee & Surfus, Sarasota, for respondent.
PER CURIAM.
The District Court of Appeal, Second District, has certified the following question for our resolution:
Does the recording of a conversation by one of the participants constitute the interception of a wire or oral communication within the meaning of Chapter 934, Florida Statutes (1979)?
State v. Tsavaris, 382 So.2d 56, 65 (Fla. 2d DCA 1980). An additional issue is raised by Tsavaris on cross-notice for review regarding the validity of subpoenas directed to Tsavaris's secretary and the reversal of the trial court's suppression of the office records produced pursuant to these subpoenas.
We answer the certified question in the affirmative. As to Tsavaris's point on cross-notice, we hold that the district court correctly determined that only Tsavaris's secretary to whom the subpoenas were directed had standing to object to the form or service of process of the subpoenas and that, by failing to object, she waived any such defects. We also agree with the district court that suppression of the office records produced pursuant to the subpoenas was not required by the fourth amendment to the United States Constitution.[1]

Part I  Wire Interception
Louis Tsavaris, who had been indicted for the first-degree murder of Cassandra Ann Burton, one of his patients, moved to suppress certain evidence against him. One of the items he sought to suppress was a tape recording of a telephone call he made to the medical examiner, Dr. Feegel, inquiring as to Miss Burton's autopsy results. Dr. Feegel answered this call on his speaker phone in the presence of a sheriff's detective who had just informed Dr. Feegel that Tsavaris was involved in the circumstances surrounding Miss Burton's death. The detective overheard the entire conversation over the speaker phone. Although not instructed by the detective to do so, when Tsavaris identified himself as the caller, Dr. Feegel turned on a recording device and asked Tsavaris to identify himself again.[2] Tsavaris's response and the remainder of the conversation were recorded by Dr. Feegel. It is the admissibility of this recording which is now in issue. There is no dispute that the testimony regarding this conversation either by Dr. Feegel or by the detective who overheard the conversation is admissible. The district court so held, and Tsavaris does not contest this holding in his cross-review request.
The trial court granted Tsavaris's motion to suppress the recording of this telephone conversation on the basis that it was an unlawful interception of a wire communication in violation of chapter 934. The district *421 court affirmed this ruling only because it felt compelled to do so in light of this Court's decision in State v. Walls, 356 So.2d 294 (Fla. 1978).
Section 934.06, Florida Statutes (1979), provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter.
(Emphasis supplied.) But for exceptions specifically spelled out in chapter 934, anyone who willfully intercepts a wire or oral communication or who discloses the contents of an unlawfully intercepted wire or oral communication is guilty of a felony in the third degree. § 934.03(1)(a) and (c). None of the exceptions listed in section 934.03(2) applies in the present factual situation. Therefore, if the recording of Tsavaris's conversation by Dr. Feegel constitutes an "interception," no part of the contents of such communication may be received into evidence.
Intercept is defined by section 934.02(3) to mean the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." "Aural acquisition" means to gain control or possession of a thing through the sense of hearing.[3] Thus pursuant to section 934.02(3), "to intercept" means to gain control or possession of a communication through the sense of hearing and through the use of an electronic or mechanical device.[4] We think it is clear that Dr. Feegel's recording of his telephone conversation with Dr. Tsavaris fits the explicit terms of the statutory definition.
As noted by the district court, this Court need look no further than our recent opinion in State v. Walls to determine that Dr. Feegel's recording is an unlawful interception. In Walls a victim of extortion threats recorded a conversation he had with the extortionists in his home. At trial the alleged extortionists successfully sought to have the recordings suppressed because they were in violation of chapter 934. This Court affirmed the trial court suppression order and expressly held that the recordings were unlawful interceptions.
The Court reached a similar conclusion in Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977), appeal dismissed, 435 U.S. 920, 98 S.Ct. 1480, 55 L.Ed.2d 513 (1978). In that case various newspapers mounted a wholesale attack upon the constitutionality of section 934.03(2)(d), Florida Statutes (1979), which requires that all parties to a conversation give consent before that conversation may be lawfully intercepted. The newspapers complained that to prohibit a reporter from secretly recording conversations (such as telephone conversations) would unreasonably inhibit news-gathering activities protected by the first amendment. We rejected the newspapers' constitutional claim and upheld the state's right to require consent of all parties. While petitioner points out that the term "intercept" was not squarely in issue in Shevin, the entire controversy in that case was premised on the fact that the recording of telephone conversations and the like would constitute illegal interceptions. Moreover, had this Court believed that the recording of a conversation without the participants' consent did not fit within the term "interception," we most certainly would have decided the case on those grounds, for the Court will not pass upon a constitutional issue if the case can be decided on other grounds. Wooten v. State, 332 So.2d 15 (Fla. 1976); Singletary v. State, 322 So.2d 551 *422 (Fla. 1975); Jones v. City of Sarasota, 89 So.2d 346 (Fla. 1956).
The history and recent amendments to chapter 934 demonstrate that the act was intended to afford broad protection to private communications. Chapter 934, the Florida Security of Communications Act, was patterned after Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510, et seq. Prior to 1974 the Florida act, like its federal counterpart, permitted the interception of defined wire or oral communications when one party to the communication gave consent:
It is not unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act.
§ 934.03(2)(d), Fla. Stat. (1973). Effective October 1, 1974, however, chapter 74-249, Laws of Florida, amended the act to require all parties to a defined wire or oral communication to give prior consent:
It is lawful under this chapter for a person to intercept a wire or oral communication when all of the parties to the communication have given prior consent to such interception.
§ 934.03(d)(2), Fla. Stat. (1979). This amendment "was a policy decision by the Florida legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to the conversation." Shevin v. Sunbeam Television Corp., 351 So.2d at 726-27. Accord, State v. News-Press Publishing Co., 338 So.2d 1313, 1316 (Fla. 2d DCA 1976). While the federal wiretapping legislation envisions that one's right to privacy must be subordinate to law enforcement interests when one party consents to the interception of a conversation, "[t]he [Florida] Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping." State v. Walls, 356 So.2d at 296 (quoting from Markham v. Markham, 265 So.2d 59 (Fla. 1st DCA 1972), affirmed, 272 So.2d 813 (1973)). Hence, the Florida act evinces a greater concern for the protection of one's privacy interests in a conversation than does the federal act.
Equally certain is the fact that the 1974 amendment to chapter 934 was designed to proscribe the method of interception used in this case. On the floor of the Florida House of Representatives, the only recorded debate on the two-party consent requirement of section 934.03(2)(d) was this comment by Representative Shreve:
[What this bill does] is to prevent, make it illegal, for a person to record a conversation, even though he's a party to it, without the other person's consent.[5]
With no further debate, the bill passed the House 109-1. We regard this lone and uncontested comment as telling evidence of the unlawful nature of Dr. Feegel's recording.
The district court decision in Tsavaris goes to great lengths to convince this Court that State v. Walls was incorrectly decided and should be overruled.[6] We remain wholly unpersuaded. The district court rationale proceeds on two faulty premises. The first is that the term "interception" means only an interception of a communication in the course of transmission and before arrival of the communication at the receiving end. In other words, a classic "wiretap." But the federal cases cited by the district court simply do not support this proposition. The primary case relied upon for this first *423 premise is Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957). In Rathbun the Supreme Court considered whether a former provision of the Federal Communications Act, 47 U.S.C. § 605, was violated when one of two parties to a telephone conversation permitted a police officer to listen in on an extension phone. The Court found no interception under the facts presented, but expressly grounded its decision upon the fact that section 605 permits an interception with one party's consent, and that one party had in fact consented to the interception:
The telephone extension is a widely used instrument of home and office, yet with nothing to evidence congressional intent, petitioner argues that Congress meant to place a severe restriction on its ordinary use by subscribers, ... The clear inference [of the statute] is that one entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone.
355 U.S. at 109-110, 78 S.Ct. at 162-63 (footnote omitted). As Mr. Justice Frankfurter points out in his dissent in Rathbun:
The fact that the Court relies on "the consent of one party" evidently implies that it would not be without the purview of § 605 for a police officer to conceal himself in a room of a house or a suite of offices having several "regularly used telephone extensions" and surreptitiously to utilize such an extension to overhear telephone conversations.
355 U.S. at 113, 78 S.Ct. at 164. Based as it is on a statute requiring the consent of only one party to an interception, Rathbun is of no value in properly analyzing the Florida act, which requires the consent of all parties. Accord, United States v. Harpel, 493 F.2d 346, 349 (10th Cir.1974). Moreover, Rathbun says nothing in support of the proposition that an interception must be an acquisition between the speaker and the receiver.
The other case cited by the district court in support of its interception theory is Carnes v. United States, 295 F.2d 598 (5th Cir.1961), cert. denied, 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19 (1962). Carnes involved the recording of telephone conversations by means of an attachment on a phone receiver. In finding no interception under these facts, the Fifth Circuit made bare reference to the view that an intercept required the listening to occur between the parties. But as in Rathbun, the decision in Carnes expressly relied upon the fact that one party to the conversation had consented to the recording:
The significant fact in the cases where eavesdropping has been approved is that a third person is listening to a conversation directly, or indirectly through an electrical device, with the consent, and often assistance, of one of the parties, and that the other party does not know that his words are overheard.
295 F.2d at 602. In any event, Carnes has been substantially undercut if not overruled by the recent decision in United States v. Turk, 526 F.2d 654 (5th Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), where the Fifth Circuit held that the recording of a telephone conversation, such as that involved in the present case, was clearly an interception.
The second premise underlying the district court decision in Tsavaris is that tape recordings do not differ in principle from testimony as to the contents of conversations, and recordings have the advantage of furnishing trustworthy evidence.[7] The response to this contention is twofold. First, the cases cited all construe statutes which permit an interception with one party's consent. In upholding the use of recordings where one party has consented, *424 these cases are merely saying that where the initial interception is legal, so too is the recording of that interception. State v. McDermott, 167 N.J. Super. 271, 400 A.2d 830 (1979), a case relied upon by the district court, makes this explicit statement. 400 A.2d at 834. Accord, Amsler v. United States, 381 F.2d 37, 50 (9th Cir.1967). Conversely, where under the Florida act an initial interception is illegal, the recording of that interception must likewise be illegal. Second, it is absolutely immaterial to a proper analysis of chapter 934 that a recording may provide more trustworthy evidence of the contents of a conversation than mere oral testimony. This would be just as true of a conversation recorded under patently illegal circumstances. Florida law mandates that while a person who engages in a telephone conversation runs the risk that another may later testify as to the contents of that communication, he can at least be assured that the conversation will not be recorded without his consent. It is not for us to question this policy judgment, but simply to apply it.[8]

Part II  Subpoenaed Records
Proceeding next to the issue of the subpoenaed records, the pertinent facts follow:
On Monday morning following Sally Burton's death on Saturday night, detectives from the Hillsborough County Sheriff's Department interviewed Chris Carlton, Dr. Tsavaris' part-time secretary. Apparently Dr. Tsavaris' office records were described and discussed in that interview. Miss Carlton declined to give the detectives any of the records or information from the records, stating that this information was confidential and disclosure would be unethical.
Later that same morning four detectives from the Sheriff's Department and an assistant state attorney went to Dr. Tsavaris' office. One member of the party served two subpoenas duces tecum on Jean Jones, Dr. Tsavaris' full-time secretary. Each subpoena was addressed to "custodian of records, 4600 Habana Suite 28, Tampa, Fla. (Office of Dr. Louis Tsavaris)." Each commanded the "custodian of records" to appear before the state attorney instanter. One subpoena directed that she bring with her all medical records relating to Cassandra Burton a/k/a Sally Burton, a/k/a Sandra Burton. The other subpoena directed the custodian to bring with her the personal appointment book of Dr. Tsavaris for the month of April, 1975.
Jean Jones thereupon went with two detectives to the office of the state attorney and there turned over to the state attorney four sets of records from Dr. Tsavaris' office. Personnel at the state attorney's office made copies of those records and returned the originals to Jean Jones.
The office records thus obtained by the state attorney were (1) sign-in sheets used for group therapy sessions, on which the patients signed their names and their comments about their feelings; (2) Dr. Tsavaris' appointment book, showing his daily appointments with patients, both groups and individuals; (3) a telephone ledger used to log incoming calls to Dr. Tsavaris' office and to note calls which he requested his secretary to make; and (4) Sally Burton's medical records.
With the exception of Sally Burton's medical records, Jean Jones maintained all of these records for Dr. Tsavaris in her capacity as his secretary. Both the appointment book and the telephone ledger were kept on her desk. After a group session, either Jean Jones or Chris Carlton made a record of attendance and put the sign-in sheet in a file for that particular group.
State v. Tsavaris, 382 So.2d at 66-67.
Tsavaris argued to the district court that the state attorney had obtained the subpoenaed office records in violation of his right to be free from unreasonable searches and *425 seizures. He further contended that the records should be suppressed because the subpoenas were defective and improperly served. Tsavaris also argued in the district court that his fifth amendment rights were violated by the production of these records, but he does not make this argument before us.[9] His brief on the merits is limited to his challenge to the district court's holding on standing and to his claim of fourth amendment violation.
The district court correctly determined that the duty rested on Tsavaris's secretary to object to the form of process served upon her. As stated by the district court:
[I]f a witness appears in response to defective process and fails to interpose any objections to the form or service of the process, the witness waives any right to be heard at a later date on those matters. Coleman v. State, 134 Fla. 802, 184 So. 334 (1938). The illegal issuance of a subpoena to a witness is not grounds for suppression of the witness' evidence on motion of the defendant in a criminal case. Objections to the legality of a subpoena are personal to and may be asserted or waived only by the person searched or examined. "It was never heard that the defendant could object to the violation of the privileges of others not claimed by them because that violation discovers evidence by which he is convicted." Sachs v. Government of the Canal Zone, 176 F.2d 292 (5th Cir.1949), cert. denied, 338 U.S. 858, 70 S.Ct. 200, 94 L.Ed. 525 (1949)... .
382 So.2d at 67.
Although Tsavaris did not have standing to challenge the form or service of process of the subpoenas, he did have standing to object to the subpoenas on the basis that they violated his fourth amendment rights. Considering Tsavaris's claim that his rights were violated because the subpoenaed records were the product of a warrantless search and seizure, the district court found no violation of the fourth amendment. Relying upon In re Horowitz, 482 F.2d 72 (2d Cir.1973), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), which traced the development of the United States Supreme Court's position on the application of the fourth amendment to a subpoena duces tecum and which was cited with approval by the United States Supreme Court in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the district court accurately determined that as far as the fourth amendment is concerned, the only requirements are that the subpoena must not be unduly burdensome and the subpoenaed documents must be relevant in purpose. In the present case, as the district court points out, no claim was made that the subpoenas were overbroad or that the evidence sought is not relevant.
Relying solely on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), for his fourth amendment challenge to the subpoenas, Tsavaris argues that the production of his papers could not be required without the intervention of a detached magistrate. Coolidge involved a search and seizure pursuant to a search warrant which had not been issued by a neutral and detached magistrate. The Supreme Court held:
We find no escape from the conclusion that the seizure and search of the Pontiac automobile cannot constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor in this case. Since he was not the neutral and detached magistrate required by the Constitution, the search stands in no firmer ground than if there had been no warrant at all. If the seizure and search are to be justified, they must, therefore, be justified on some other theory.
403 U.S. at 453, 91 S.Ct. at 2031.
The State responds that the present case involved issuance of a subpoena, not a search warrant, and there is no requirement *426 that a subpoena be issued by a detached magistrate. It argues that the district court correctly reversed the trial court's order suppressing the office records.
We are not persuaded by Tsavaris's argument which is contrary to precedent established by the Supreme Court of the United States. The fourth amendment does not require that a subpoena duces tecum be issued by a detached magistrate as Tsavaris now suggests. Although in the early decision of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Supreme Court declared that the fourth amendment applied to subpoenas duces tecum in the same manner in which it applied to search warrants, the Supreme Court retreated from this broad view in subsequent decisions.
In Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the Supreme Court announced that the search and seizure clause of the fourth amendment was not intended to interfere with the power of courts to compel the production of evidence through a subpoena duces tecum but further explained that a test of reasonableness should be applied in considering whether a subpoena duces tecum amounted to an unreasonable search and seizure. Applying the test of reasonableness, it held that the particular subpoena under review was too sweeping in its terms to be regarded as reasonable. Cf. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327 (1908), wherein, employing this test of reasonableness, the Supreme Court enforced a subpoena because it described in reasonable detail what was to be produced.
Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), involved the issuance of subpoenas duces tecum by the wage hour administrator in the course of an investigation pursuant to the Fair Labor Standards Act, which were challenged on the basis that they violated the fourth amendment proscription against unreasonable searches and seizures. The Supreme Court found that there was no fourth amendment violation and explained that there was a misconception of the fourth amendment's function as it related to subpoenas and that this misconception lay with the identification of cases involving "figurative" or constructive search with cases of actual search and seizure. The Court held that, if the fourth amendment was applicable at all to the subpoenas in question, at the most, it only ensures relevancy and guards against abuse of too much indefiniteness or breadth in the things required to be particularly described. Oklahoma Press v. Walling, 327 U.S. at 208, 66 S.Ct. at 505. See also, See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In United States v. Dionisio, 410 U.S. 1, 11-12, 93 S.Ct. 764, 770, 35 L.Ed.2d 67 (1973), the Court reiterated: "The Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms `to be regarded as reasonable.' Hale v. Henkel, 201 U.S. 43, 76 [26 S.Ct. 370, 379]; cf. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 217 [66 S.Ct. 494, 505, 509]." See also, United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).
The distinction between searches and seizures and subpoenas insofar as the fourth amendment's application is concerned was again made by the Supreme Court in Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), wherein the Court stated that the fourth amendment protects against seizures without warrant or probable cause and "against subpoenas which suffer from `too much indefiniteness or breadth in the things required to be "particularly described,'" Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208, [66 S.Ct. 494, 505] (1946)... ." 425 U.S. at 401, 96 S.Ct. at 1576.
The use of a properly limited subpoena does not constitute an unreasonable search and seizure under the fourth amendment. All that is required is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overly broad or burdensome. A proper subpoena is one that is properly limited in scope, relevant in purpose, and specific in directive so that compliance will *427 not be unreasonably burdensome. See United States v. Palmer, 536 F.2d 1278 (9th Cir.1976); In re Horowitz.
In the present case, the district court correctly observed:
No claim has been made that the subpoenas duces tecum in this case were overbroad or that the evidence sought is not relevant. Neither claim would be successful. Accordingly, we hold that the requirements of the Fourth Amendment were met with regard to the subpoenas duces tecum in this case.
State v. Tsavaris, 382 So.2d at 71. The district court further appropriately remarked:
We pause to observe that, in our view, the procedure followed by the state in this case  that is, using subpoenas duces tecum to obtain the evidence it sought in connection with its investigation of Dr. Tsavaris  was much less intrusive than would have been a search pursuant to a search warrant. O'Connor v. Johnson, Minn., 287 N.W.2d 400 (1979). We see no basis for criticizing the state for choosing to use subpoenas duces tecum to obtain the records in question in lieu of seeking the issuance of a search warrant, assuming there was probable cause for such a warrant.
382 So.2d at 71 (footnote omitted).
Subpoenas duces tecum are different from search warrants and are indisputably less intrusive. While there is no opportunity to challenge a search warrant, a subpoena duces tecum is subject to a motion to quash prior to the production of the requested materials. While a search warrant may involve the police rummaging through one's belongings and may involve the threat or actual use of force, a subpoena duces tecum requires the subpoenaed person to bring the materials sought at a time and place described in the subpoena. See Stanford Daily v. Zurcher, 353 F. Supp. 124 (N.D. Cal. 1972); Hynes v. Moscowitz, 44 N.Y.2d 383, 406 N.Y.S.2d 1, 377 N.E.2d 446 (Ct.App. 1978), appeal dismissed, 439 U.S. 921, 99 S.Ct. 302, 58 L.Ed.2d 315 (1978).
In summary, we hold that Dr. Feegel's recording of Tsavaris's conversation with him was an unlawful interception of a wire or oral communication within the meaning of chapter 934. Further, we hold that the subpoenaed records are admissible and the district court correctly reversed the trial court's suppression of these records.
Accordingly, the result of the district court's decision is approved.
It is so ordered.
SUNDBERG, C.J. and OVERTON, J., concur with Part I and II.
ADKINS, J., concurs with Part I and dissents with Part II with an opinion.
ENGLAND, J., concurs with Parts I and II, but dissents to the admissibility of documents with an opinion.
ALDERMAN, J., concurs with Part II and dissents with Part I with an opinion, with which BOYD and McDONALD, JJ., concur.
ADKINS, Justice, concurring in part and dissenting in part.
I concur in Part I of the opinion holding that the recording of the Tsavaris-Dr. Feegel conversation was an unlawful interception.
I dissent from Part II of the opinion authorizing the seizure of private papers by use of a subpoena duces tecum.
In the first appearance of this case (Tsavaris v. Scruggs, 360 So.2d 745 (Fla. 1977)), four members of the Court held that Tsavaris was not entitled to immunity because of the seizure of his office records. Three judges refrained from expressing any view on the question of whether the materials from Tsavaris' office should be suppressed. One justice stated that "the law enforcement authorities in the instant case may have unwittingly victimized Dr. Tsavaris for which he has recourse under an appropriate motion to suppress." Id. at 754. Three justices opined that Tsavaris was granted immunity. As stated by Justice Sundberg, "It is often said that hard cases make bad law." Id. at 753.
*428 The trial judge in analyzing the opinions in Tsavaris v. Scruggs, supra, correctly received the implied message that the motion to suppress should be granted. In my opinion he followed our directions.
The majority says that Tsavaris' secretary, to whom the subpoenas were directed, had standing to object to any defects in the subpoenas and that, by failing to object, she waived any defect.
As stated by Justice Alderman in Shapiro v. State, 390 So.2d 344 (Fla. 1980):
First, we note that the trial court's conclusions of fact come to us clothed with a presumption of correctness, and, in testing the accuracy of these conclusions we must interpret the evidence and all reasonable deductions and inferences which may be drawn therefrom in the light most favorable to the trial judge's conclusions. State v. Nova, 361 So.2d 411 (Fla. 1978).
The original record discloses the following findings and conclusions by the trial judge:

I feel that Dr. Tsavaris has a constitutional Fourth Amendment right to be secure in his office against unreasonable search and seizures of his papers and that he, in these circumstances, had a reasonable expectation of privacy to these documents. And that primarily I did read syllabuses at least of all the cases that I took out of here.
Primarily the cases Mr. Cannella cites deal, I believe, with third party cases and I don't believe that the law would treat his personal secretary as a third party in these circumstances to come within the purview of those cases.
I recommend that the State Attorney has a duty and obligation to issue subpoenas and subpoenas duces tecum, but they cannot be used to abrogate a Fourth Amendment to the Constitution of the State of Florida and the United States Constitution. They are not based on probable cause and they don't have the equally as important element of a neutral and detached judge passing on these sort of situations. And to authorize the State to just issue a subpoena duces tecum and go out and seize the matters that are particularly described therein and take the position, which may turn out to be the right position, that even assuming that the parties do not have to comply with the subpoena duces tecum, that all they have to do is say, "no, I am not complying with them," then go in and be heard in a court of law, is somewhat analogous to me at least in a situation of stating that you can or cannot resist an unlawful arrest.
There is a valid distinction, obviously, when you are resisting arrest. There is violence involved, and we are not contemplating violence here. But, in Florida we decided that you must comply with an unlawful arrest and then you have your remedies later. And that you can't in the streets say, "Well, this is an unlawful arrest, therefore, I am going to resist it," and law and order breaks down.
And that is the situation we are confronted with here; that the secretary is supposed to, in effect, say, "Well, I am not complying with what appears to be a lawful court order. I am not going to comply with it."

Number one, I don't think it is good public policy, and, number two, I think it's, for whatever it is worth and maybe it is worth nothing, unreasonable to expect that citizens faced with subpoena duces tecum or invalid search warrants are going to be knowledgeable enough to resist them on the spot.
Therefore, I think that these matters that have been seized here and the manner in which they have been seized, also  I don't know that on the matter of Mr. Freeman issuing the or serving the duces tecum, I don't believe I am going to pass on that or make any mention of that.
Mr. Cannella makes a good argument. Of course, Mr. Surfus does, too. I don't know that it is necessary to decide whether or not a State Attorney can serve that which he's authorized to issue.
However, I think that perhaps I should comment, in the event that I am wrong *429 in my ruling, I further want to state that in the event that I am wrong in this ruling that in my judgment that portion of the items seized which were seized only after the Assistant State Attorney said, "Well, if you don't give them to us, we will go get another warrant for them," were not given up freely and voluntarily, were given up only under an implied coercion and were not, consent wasn't given and there was no waiver of any rights there. That, even in the event I am wrong, I think those portions that were secured that were not mentioned in the subpoena duces tecum, even though given up voluntarily, were given up under an unintentional compulsion of the State. (Emphasis added.)
The majority opinion completely ignores the testimony as well as the specific findings by the trial judge by holding that the evidence was admissible because Tsavaris' secretary failed to object. Unbelievably, the majority opinion authorizes issuance of a subpoena duces tecum by a prosecuting attorney so long as it is "properly limited in scope, relevant in purpose, and specific in directive so that compliance would not be unreasonably burdensome." The majority opinion does not require the existence of probable cause that the person to whom the subpoena is directed has committed any offense or violated any laws of the state or country. Nor does it require a finding of reasonableness. In other words, as long as the subpoena duces tecum is not overbroad, as long as the evidence might be relevant to an investigation, there is no need for the prosecuting attorney in the future to secure any type of search warrant.
This has been a bad case. I am well aware of the problems facing law enforcement officers in their zealous attempts to enforce the law and prosecute crime. They have an obligation to the people and to the state to see that all criminals are brought to the bar of justice. On the other hand, even in the face of public criticism, we have an obligation to each individual citizen of the state of Florida. If a mistake is made during an investigation of a crime, our duty is to apply the case law and statutory law, even if a suspect goes free. We should never recede from well-established precedent in order to correct an obvious error made by law enforcement or prosecuting officials. Stability and certainty in the law are more important than convicting any one suspect. I firmly believe that the law enforcement officers and the prosecuting officers are guided by good intentions, and I also believe that those same officers and same prosecutors are more interested in the preservation of established legal principles than in the prosecution of one suspect.
I would answer the certified question in the affirmative and hold that the recording of a conversation by one of the participants constitutes an interception of a wire or oral communication within the meaning of chapter 934, Florida Statutes (1979). Furthermore, I would quash the decision of the district court of appeal and affirm the trial court's suppression of the office records produced pursuant to the subpoenas duces tecum.
ENGLAND, Justice, concurring in part and dissenting in part.
I cannot fault the Court's analysis of the wire intercept and Fourth Amendment issues, for which reason I concur in today's decision on those issues. Nonetheless, I persist in my view, expressed when this case first came to us for review,[1] that Florida's constitutional protection against self-incrimination[2] bars the use of Dr. Tsavaris' seized personal documents. The trial court ruled these documents inadmissible, and I would reinstate his suppression order.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree that the subpoenaed records are admissible into evidence and that the district court correctly reversed their suppression. I disagree, however, with the majority's *430 holding that the recording of the conversation which Dr. Feegel had with Tsavaris constituted an unlawful interception of a wire or oral communication within the meaning of chapter 934. Florida Statutes (1979).
The district court affirmed the trial court's ruling that this recording was an unlawful interception because it felt it had no alternative but to follow our recent pronouncement in State v. Walls, 356 So.2d 294 (Fla. 1978). In a detailed and well-reasoned opinion, however, Judge Danahy explained why our decision in State v. Walls, as well as its own prior decision in State v. News Press Publishing Co., 338 So.2d 1313 (Fla. 2d DCA 1976), was incorrect.
In my view, the district court's rationale for its view that Dr. Feegel's recording did not amount to an interception within the contemplation of section 934.06 is convincing, and for the following reasons I would hold that the recording is admissible.
Section 934.06, Florida Statutes (1979), provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter. [Emphasis supplied.]
Section 934.03(1)(a), Florida Statutes (1979), provides:
(1) Except as otherwise specifically provided in this chapter, any person who:
(a) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; ... .
shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, § 775.083, or § 775.084. [Emphasis supplied.]
Since none of the exceptions enumerated in section 934.03 apply to the present facts, if Dr. Feegel's recording was an interception within the contemplation of chapter 934, then he is guilty of a third-degree felony, and none of the contents of the recorded conversation is admissible into evidence. Section 934.06.
This recording, however, was not an interception. Intercept is defined by section 934.02(3) to mean the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." Intercept is defined in general to mean "to take, seize, or stop by the way or before arrival at the destined place." Webster's Third New International Dictionary (unabridged). I find highly persuasive the rationale of the United States Circuit Court of Appeals, Fifth Circuit, in Carnes v. United States, 295 F.2d 598 (5th Cir.1961), cert. denied, 369 U.S. 961, 82 S.Ct. 949, 8 L.Ed.2d 19 (1962), for its finding that the recording of a conversation by a participant thereto does not amount to an interception. Relying on the United States Supreme Court's decision in Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1959), the Fifth Circuit explained that interception does not mean the obtaining of what is to be sent before or at the moment it leaves the possession of the sender or after or at the moment it comes into the possession of the intended receiver. It held that the consenting participant to the conversation would be free to divulge its contents in the courtroom or elsewhere and that "the only function served by the recording is to preserve a permanent and accurate record of the conversation." 295 F.2d at 602. The Court further stated:
In the case at bar this point is particularly clear since the recording was made by the very individual who was participating in the conversation. Taking a sensible view of it, the only difference between a person testifying to a conversation which he participated in or overheard and a recording of the conversation is that the recording has the advantage of furnishing trustworthy evidence (assuming a showing that the tape has not been tampered with).
295 F.2d at 602.
In the present case, there was no aural acquisition by means of any electronic or *431 mechanical device. Dr. Feegel received the conversation over a telephone receiver and recorded it only after it had reached its destination. The telephone receiver was the means used to acquire the conversation. The recorder was not the acquiring device but was merely an accessory designed to preserve the contents of the communication and to thereby obtain the most reliable evidence. See United States v. Santillo, 507 F.2d 629 (3d Cir.1975), cert. denied, sub nom. Buchert v. United States, 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975); United States v. Harpel, 493 F.2d 346, 350 (10th Cir.1974). One does not intercept a conversation made directly to himself. Tsavaris's communication was lawfully received over the telephone receiver; therefore, the recording of it by Dr. Feegel was not an interception, and the tape is admissible at Tsavaris's trial.
State v. Walls and Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977), appeal dismissed, 435 U.S. 920, 98 S.Ct. 1480, 55 L.Ed.2d 513 (1978), are not controlling here. In neither case was this Court confronted with the question of whether a recording of a conversation by a party thereto is an "intercept." In State v. Walls, the victim of extortionary threats recorded a conversation which occurred in his home between himself and the extortionist without the consent of the extortionist. Therein, this Court held that the recording should be suppressed based upon the premise that the extortionary threat was an oral communication within the definition of section 934.02(2), Florida Statutes (1975). The issue of whether the recording was an "interception" within the definition of section 934.02(3) was not presented to this Court. The thrust of the State's argument was that the extortionary threats were not an oral communication. In Walls, the State expressly conceded in its brief that if the threats were oral communications, then the recording was an interception. Not being confronted with the issue of whether the recording was actually an interception, this Court, for the purpose of deciding that case, accepted this concession that there was an interception.
Likewise, in Shevin v. Sunbeam Television Corp., this Court was not confronted with the issue of whether the recording of a conversation by one of the participants without the consent of the other was an interception. Sunbeam Television Corporation had filed a complaint challenging the constitutionality of section 934.03(2)(d) insofar as it required all parties to consent before a legal interception of a conversation could be had. Sunbeam alleged that this statute was a prior restraint in violation of the first amendment. This Court held that section 934.03(2)(d) is not a restraint on the press and does not violate the first amendment. In order to hold that the present recording is not an interception, it is not necessary that we recede from our holding in Sunbeam that where, in fact, there has been an "interception" by a member of the press, the first amendment does not exempt that interception from the requirement of section 934.03(2)(d) that all the parties to the oral or wire communication consent before the interception is lawful.
In the present case, for the first time, this Court is confronted squarely with the issue of whether the recording of a conversation by one of the participants is an interception as that term is defined in chapter 934, and I would hold that it is not. Other courts which have considered this issue have consistently held that such a recording is not an interception.[1]
I agree with the majority's statement that "where under the Florida act an initial interception is illegal, the recording of the interception must likewise be illegal." Slip op. at 8. But this principle of law does not apply to the present case because here there was no illegal interception, the recording of which would likewise have been illegal. There was no nonconsensual tapping of the telephone line to intercept the wire communication *432 between Tsavaris and Dr. Feegel before it reached its intended destination. Such tapping clearly would have been an illegal interception even if the communication had not been recorded.
In the present case, no interception took place when Dr. Feegel heard Tsavaris's voice over his telephone receiver. This clearly was a legal reception of a wire communication, and it therefore cannot be said that Dr. Feegel's recording of this communication after it had arrived at its destined place was the recording of an initial illegal interception. Dr. Feegel can be guilty of misconduct only if the recording of a lawfully received communication is itself illegal. There is no provision in chapter 934 that makes the recording of a communication by itself illegal. Consequently, I conclude that Dr. Feegel is not guilty of an illegal interception and that the recording is admissible.
I cannot believe that the legislature intended to brand as a third-degree felon the victim of extortionary threats, who, while in his home, electronically records the threats made against him. E.g. State v. Walls. Likewise, I do not believe the legislature intended that a public-spirited citizen like Dr. Feegel, who, in the course of his employment as medical examiner, records a lawfully received telephone communication relevant to a pending murder investigation, should be subjected to the possibility of criminal prosecution. If the legislature had intended to make it unlawful for any person to record an oral or wire communication, it could easily have done so in plain and simple language. It did not. Instead, it criminalized only the willful interception of wire or oral communication. Section 934.03(1)(a). When section 934.02(2)(d) was amended to provide that it was lawful to intercept a wire or oral communication when all of the parties to the communication have given prior consent to such interception, the legislature still referred only to interceptions, not recordings. While it is true that it is illegal to record an illegal interception, the recording of an otherwise lawfully received oral or wire communication is not an unlawful interception.
All that Dr. Feegel did in the present case was preserve the wire communication lawfully received by him from Tsavaris, the same as if he had taken down in shorthand the communication and then made a verbatim transcript. The majority says that the legislature intended that for this public-spirited action Dr. Feegel is guilty of a third-degree felony. Surely, the legislature did not intend such an absurd result. I hope that the legislature will correct what I perceive to be the majority's judicial distortion of chapter 934.
Accordingly, I would approve the district court's decision insofar as it reverses the trial court's suppression of the subpoenaed office records, but I would quash that portion of the district court's decision holding the tape recording of Dr. Feegel's conversation with Tsavaris inadmissible.
BOYD and McDONALD, JJ., concur.
NOTES
[1] We refer only to those items described in the subpoenas. The trial court found that some items not mentioned in the subpoenas were not given up freely and voluntarily. This portion of the trial judge's order is not before us for review.
[2] This case does not involve the issue of whether the interception was conducted by a law enforcement officer or a person acting under the direction of a law enforcement officer pursuant to section 934.03(2)(c), Florida Statutes (1979).
[3] Webster's Third New International Dictionary (1961 unabridged).
[4] Notably, the statute does not speak in terms of "wiretapping" or "eavesdropping," or any other specific means of acquiring the contents of a communication.
[5] Taken from the tape of the afternoon session, Florida House of Representatives' debate of SB 459, on May 30, 1974.
[6] We are at a loss to understand why the district court went so far  in the absence of new or controlling wisdom  as to disavow its own recent decision, State v. News-Press Publishing Co., 338 So.2d 1313 (Fla.2d DCA 1976), on the "interception" issue. Obviously, we think State v. News-Press is persuasive and was rightly decided on that issue.
[7] Some of the cases cited as authority include United States v. Bastone, 526 F.2d 971 (7th Cir.1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976); Amsler v. United States, 381 F.2d 37 (9th Cir.1967); State v. McDermott, 167 N.J. Super. 271, 400 A.2d 830 (1979); State v. Birge, 240 Ga. 501, 241 S.E.2d 213, cert. denied, 436 U.S. 945, 98 S.Ct. 2847, 56 L.Ed.2d 786 (1978).
[8] Indeed, it does not seem unreasonable to conclude that the nonconsensual recording of a telephone conversation, by itself, is a pernicious and intrusive act worthy of legislative proscription.
[9] Consequently, we intimate no opinion with respect to an individual's standing to assert nor upon the efficacy of any fifth amendment challenge to production of subpoenaed documents such as are here involved.
[1] Tsavaris v. Scruggs, 360 So.2d 745, 754-55 (Fla. 1977) (England, J., dissenting.)
[2] Art. I, § 9, Fla. Const.
[1] The district court has given a detailed list of cases of other jurisdictions, state and federal, holding that the recording of a conversation by a participant thereto is not an interception. State v. Tsavaris, 382 So.2d at 63-64.