DANIEL S. PEARSON, Judge,
concurring.
Morales’ claim that he did not receive the effective assistance of counsel is, inter alia, bottomed on his counsel’s failure to utilize a tape recording of a telephone conversation between Morales and Reynaldo Batís- *696 ta, a co-defendant at the time of the conversation and a principal prosecution witness against Morales at the time of trial. Batista’s recorded statements — namely, that Morales was innocent of any crime and that another State witness had convinced all the accomplices to testify falsely against Morales — were undeniably inconsistent with Batista’s trial testimony that Morales had hired Batista and the others to rob a small food market.[1]
Defense counsel’s decision not to challenge Batista’s testimony with the tape recording necessarily was influenced — at least to some degree — by the fact that he had, in violation of Section 934.03(l)(a), Florida Statutes (1981),[2] instructed Morales to secretly tape an anticipated telephone conversation between Morales and Batista.[3]’[4] From this advice, there arose the conflict between serving the interest of the client by using the recording or the interest of the attorney by not using the recording and thus insuring that the circumstances of its making would remain undisclosed.
But, although I agree that Morales has sufficiently shown that his counsel’s decision not to use the tape recording was not motivated by the best interests of Morales, if the recording were nonetheless inadmissible, counsel’s decision not to use it would have caused absolutely no harm to Morales, counsel’s motivation notwithstanding. Thus, if the recording were inadmissible, I would be compelled to vote to affirm. I write separately solely to consider the admissibility of the recording.
As of 1983, when this case was tried, the Florida cases were in agreement that a tape recording of a telephone conversation made without the consent of all parties to the conversation was not admissible as substantive evidence, that is, to establish something as a fact.[5] Thus, in State v. Tsavaris, 394 So.2d 418 (Fla.1981), a medical examiner, after being told that Tsavar-is, a psychiatrist, was suspected of killing his patient, recorded his phone conversation with Tsavaris when Tsavaris called to ascertain the results of the patient’s autopsy. The court, finding that “while a person who engages in a telephone conversation runs the risk that another may later testify as to the contents of that communication, he can at least be assured that the conversation will not be recorded without his consent,” id. at 424, held the recording inadmissible as an illegal interception. Earlier, in State v. Walls, 356 So.2d 294 (Fla.1978), the court affirmed the trial court’s suppression of a tape recording of a conversation between an extortion victim and the extortionists-defendants where the recording was made by the victim without the consent of the others. And, in State v. News-Press Publishing Co., 338 So.2d 1313 (Fla. 2d DCA 1976), a reporter’s taping of her telephone conversation with a person un *697 aware of the taping was held an unlawful interception, leading to the ultimate conclusion that the reporter’s subsequent erasure of the tapes did not constitute the destruction of admissible evidence. See also Markham v. Markham, 265 So.2d 59 (Fla. 1st DCA 1972).[6]
However, notwithstanding that the tape recording made by Morales would not have been admissible to prove that he had not hired people to rob the store or that one of the State’s witnesses had induced others to testify falsely against Morales, I am convinced that it would have been admissible to impeach Batista’s testimony.[7]
While no Florida case had held that a tape recording made in violation of Chapter 934, Florida Statutes (1981), was admissible for impeachment purposes, the issue of the use of otherwise inadmissible evidence for impeachment purposes was not novel. As far back as 1954, the United States Supreme Court had allowed unlawfully seized contraband to be admitted for impeachment purposes. The Court stated:
“It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government’s possession was obtained to his own advantage, and provide himself with a shield against contradictions of his own untruths.”
Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503, 507 (1954).
Some years later, Florida followed Walder in holding that, despite our state’s constitutional prohibition against the use of evidence obtained by illegal searches and seizures, such evidence may be admitted solely to impeach where a defendant takes the stand and commits perjury. Dornau v. State, 306 So.2d 167 (Fla. 2d DCA 1974). And, following Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Florida supreme court in State v. Retherford, 270 So.2d 363 (Fla.1972), held that statements taken in violation of the Miranda rule, although not admissible substantively, were admissible to impeach a defendant’s credibility. See also Nowlin v. State, 346 So.2d 1020 (Fla.1977).
Logic dictates that the rule allowing the use of illegally obtained evidence for impeachment purposes be the same even though the illegality may differ.[8] Indeed, this is precisely the result reached by the Ohio court in Beaber v. Beaber, 41 Ohio Misc. 95, 322 N.E.2d 910 (1974). There the court was asked by Mrs. Beaber to apply Markham v. Markham, 265 So.2d 59, and deny admission of secret tape recordings of her conversations with her lover. Although acknowledging the similarity between the Ohio wiretap statute and Florida’s Chapter 934, the court refused to apply Markham since the tapes (revealing the wife’s insidious plot with her lover to feign mistreatment at the hands of her husband) were offered to impeach the wife’s testimony that her husband had mistreated her.
I conclude, then, that the tape was admissible here to impeach Batista’s testimony. Where, as here, it is a witness, not the defendant, who is to be impeached, the case is a stronger one for allowing the impeachment use of the evidence. The concern in *698 cases where it is the defendant being impeached that the jury might experience difficulty in applying the evidence solely to judge the defendant’s credibility and apply it instead — wrongfully—to judge the defendant’s guilt is simply not present here. Thus, I am satisfied that the decision of defense counsel not to use the tape was harmful to Morales and join in the reversal for a new trial.

. During the course of the robbery, two people were killed. Morales was convicted, as charged, of conspiracy to commit armed robbery, attempted armed robbery, and two counts of second-degree murder.

. This section provides that any person who "[w]illfully intercepts, endeavors to intercept, or procures any other person to intercept or endeav- or to intercept any wire or oral communication" shall be guilty of a third-degree felony. Under the statute, an illegal interception includes one party’s recording of a conversation without the consent of the other. State v. Tsavaris, 394 So.2d 418 (Fla.1981); State v. Walls, 356 So.2d 294 (Fla.1978); State v. News-Press Publishing Co., 338 So.2d 1313 (Fla. 2d DCA 1976).

. While in jail, Batista indicated to Morales’ defense attorney that he wanted to speak personally to Morales by telephone about a matter of importance.

. I find no record support for Judge Schwartz's statement that "the trial judge plainly believed that the supposed conflict had nothing to do with the determination not to offer the tape in question.” And in response to his note 1, the tape itself is rather forceful evidence that the interception occurred, but even if not. Morales’ defense attorney most assuredly believed it to be.

. There may be a question as to whether the State, as a party to the proceeding at which the unlawfully intercepted recording is offered, has standing to object. An "aggrieved person” under the statute is one against whom the interception was directed. See § 934.09(9)(a), Fla.Stat. (1981). At the least, the witness could object to the publication of the recording. For present purposes, I see no need to address the standing problem, if one exists.

.The more recent decision of the Supreme Court of Florida in State v. Inciarrano, 473 So.2d 1272 (Fla.1985), casts doubt on the continued viability of Walls, if not Tsavaris. In Indar-rano, the court held that a tape recording made by a murder victim without the knowledge of the defendant-murderer was admissible as substantive evidence on the theory that because the defendant had no reasonable expectation of privacy — that is, one that society is prepared to recognize as reasonable — the exclusionary rule of Section 934.06, Florida Statutes, does not apply.

. A pathetic effort was made to reproduce what was said in the telephone conversation through an eavesdropping witness, Morales' son. His ostensibly verbatim account of the conversation challenged the jury to believe either that the witness was a master of Gregg shorthand or had a prodigious memory. As defense counsel correctly observes, the son’s testimony was, at best, hardly a substitute for the objective recording and, at worst, viewed by the jury as totally incredible.

. Providing, of course, that the trustworthiness of the evidence is not in question.