351 So.2d 723 (1977)
Robert L. SHEVIN, As Attorney General and Richard E. Gerstein, As State Attorney, Appellants,
v.
SUNBEAM TELEVISION CORPORATION and the Miami Herald Publishing Company, Appellees.
No. 50938.
Supreme Court of Florida.
October 28, 1977.
*724 Robert L. Shevin, Atty. Gen., and James D. Whisenand, Deputy Atty. Gen., Tallahassee, for appellants.
Allan Milledge and Alan Rosenthal, of Milledge & Hermelee, and Parker D. Thomson, of Paul & Thomson, Miami, for appellees.
Thomas W. McAliley and David J. White, of Beckham, McAliley & Proenza, Miami, for American Civil Liberties Union of Florida, as amicus curiae.
ADKINS, Justice.
This is an interlocutory appeal from the Circuit Court of Dade County which held Section 934.03(2)(d), Florida Statutes, to be unconstitutional.
We have accepted jurisdiction and will treat the interlocutory appeal as a petition for writ of certiorari. Burnsed v. Seaboard Coastline Ry. Co., 290 So.2d 13 (Fla. 1974).
Section 934.03(2)(d), Florida Statutes (1969), permitted the interception of defined wire or oral communications when one party to the communication gave prior consent:
"It is not unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal act." (Emphasis supplied.)
Section 934.03(2)(d), Florida Statutes, was amended in 1974, by Chapter 74-249 [S.459], Laws of Florida, to require all parties to the defined wire or oral communication to give prior consent to a defined interception:
"It is lawful under this chapter for a person to intercept a wire or oral communication when all of the parties to the communication have given prior consent to such interception." (Emphasis supplied.)
Appellee Sunbeam Television Corporation is a television station in Miami, Florida, and the Miami Herald Publishing Company is a division of Knight-Ridder Newspapers, Inc., which publishes the Miami Herald, a newspaper of general circulation in the State of Florida.
*725 The complaint was filed by Sunbeam alleging that the amendment impaired its news gathering dissemination activities and constituted a prior restraint in violation of the First Amendment. Sunbeam alleged that secret recordings during investigative reporting activities were necessary to insure the accuracy of the information gathered and to preserve the conversation. It was further alleged that the interests protected by the statute were interests in privacy, which are subordinate to their alleged First Amendment rights. The Miami Herald intervened as a party plaintiff.
Appellees say there are three basic elements which necessitate the use of concealed recording equipment in investigative reporting: accuracy; candidness of person interviewed; and corroboration. The element of accuracy, they say, is in the interest of the individual as well as the public generally, in that no one will be harmed by an untruth. Further, it is in the interest of the broadcaster or publisher that it be able to establish the truth with precision.
Appellees point out that persons engaged in unlawful or undesirable conduct will not speak candidly if they know that their words are being recorded.
Furthermore, if no corroboration of the information gathered was available other than the notes or memory of the reporter, the news resulting from the investigation could not be broadcast. The only effective corroboration of a news story is the recording of the conversation, where the exact words, manner of speech, and inflection can be preserved.
Testimony was produced displaying the value of concealed recordings in investigations of consumer fraud, housing discrimination, illegal abortion, corruption of officials, and various other matters. Appellees contend that the statute substantially impairs these types of news gathering activities.
Appellees do not claim any impairment of their freedom to publish. Instead, they rely on their right to gather news without governmental interference.
In Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), a prison rule under attack prevented media representatives from conducting interviews with specific individual inmates. The media could, however, have full access to observe prison inmates through tours and had the right to speak to any inmate encountered and interview inmates selected at random by correctional officials. Inmates and media representatives challenge the rule by relying on their right to gather news without governmental interference. The United States Supreme Court concluded that the rule did affect news sources and news gathering activities, but did not violate any First Amendment rights of the press:
"More particularly, the media plaintiffs assert that, despite the substantial access to California prisons and their inmates accorded representatives of the press  access broader than is accorded members of the public generally  face-to-face interviews with specifically designated inmates is such an effective and superior method of newsgathering that its curtailment amounts to unconstitutional state interference with a free press. We do not agree." At 833, 94 S.Ct. at 2809.
A similar factual situation existed in Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974). In Saxbe, supra, the record contained testimony to the effect that personal interviews were "indispensable to effective reporting." One witness testified this his experience with 1600 interviews clearly illustrated that the truth could only be gained from private one-to-one interviews. Even with this factual predicate the United States Supreme Court declined to accept any First Amendment violation asserted by the media.
Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), concerned the rights of the media to have constitutionally protected confidential sources. The court required three reporters to appear before grand juries and to testify. The following appeared in the opinion:
"We do not question the significance of free speech, press, or assembly to the *726 country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated. But these cases involve no intrusions upon speech or assembly, no prior restraint or restriction on what the press may publish, and no express or implied command that the press publish what it prefers to withhold. No exaction or tax for the privilege of publishing, and no penalty, civil or criminal, related to the content of published material is at issue here. The use of confidential sources by the press is not forbidden or restricted; reporters remain free to seek news from any source by means within the law. No attempt is made to require the press to publish its sources of information or indiscriminately to disclose them on request.
"The sole issue before us is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime. * * *
"It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. Under prior cases, otherwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed. * * *
"It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. * * *
"We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do. * * *
"This conclusion itself involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire, nor does it threaten the vast bulk of confidential relationships between reporters and their sources. * * *
"It would be frivolous to assert  and no one does in these cases  that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news sources to violate valid criminal laws. Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news. Neither is immune, on First Amendment grounds, from testifying against the other, before the grand jury or at a criminal trial. The Amendment does not reach so far as to override the interest of the public in ensuring that neither reporter nor source is invading the rights of other citizens through reprehensible conduct forbidden to all other persons. * * *
"Neither are we now convinced that a virtually impenetrable constitutional shield, beyond legislative or judicial control, should be forged to protect a private system of informers operated by the press to report on criminal conduct, a system that would be unaccountable to the public, would pose a threat to the citizen's justifiable expectations of privacy, and would equally protect well-intentioned informants and those who for pay or otherwise betray their trust to their employer or associates. The public through its elected and appointed law enforcement officers regularly utilizes informers, and in proper circumstances may assert a privilege against disclosing the identity of these informers." (Emphasis supplied.) At 681-98, 92 S.Ct. at 2656-2665.
Section 934.03(2)(d), Florida Statutes, is not a restraint or restriction on what the press may publish, nor is there an expressed or implied command that the press publish which it prefers to withhold. Nor does this case involve any intrusion upon speech or assembly. This was a policy decision by the Florida legislature to allow *727 each party to a conversation to have an expectation of privacy from interception by another party to the conversation. It does not exclude any source from the press, intrude upon the activities of the news media in contacting sources, prevent the parties to the communication from consenting to the recording, or restrict the publication of any information gained from the communication. First Amendment rights do not include a constitutional right to corroborate news gathering activities when the legislature has statutorily recognized the private rights of individuals.
In Sigma Delta Chi v. Speaker, Maryland House of Delegates, 270 Md. 1, 310 A.2d 156 (1973), the court affirmed the issuance of an injunction that prohibited reporters from attending sessions of the Maryland legislature with tape recorders in their possession. A rule of the legislature prohibited the use of cameras and recording instruments in the chambers without permission from the senate president or house speaker. The court recognized that news sources and news gathering were protected by the First Amendment, but rejected the assertion that the need of the news media to promote greater accuracy and speed in reporting was also within the protective purview of the First Amendment. The court said:
"They merely claim that the use of tape recorders in each chamber will promote greater accuracy and speed in reporting. We are unwilling to include those purposes, however worthwhile they may be, within a constitutionally protected right to gather news. Thus, the exclusion of recording devices from the legislative sessions constitutes no abridgement of First Amendment rights." 310 A.2d at 159.
The protection of a person's general right to privacy is left largely to the states. Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
News gathering is an integral part of news dissemination, but hidden mechanical contrivances are not indispensable tools of news gathering. The ancient art of investigative reporting was successfully practiced long before the invention of electronic devices, so they cannot be said to be "indispensable tools of investigative reporting." The First Amendment is not a license to trespass or to intrude by electronic means into the sanctity of another's home or office. It does not become such a license simply because the person subjected to the intrusion is reasonably suspected of committing a crime.
This was the reasoning followed in Dietemann v. Time, Inc., 449 F.2d 245 (9th Cir.1971), where investigative reporters attempted to secure information concerning criminal violations in the practice of medicine. A reporter was wired to transmit conversations for recording and a photographer secretly took pictures. The alleged quack successfully sued the press representatives for damages to his "privacy." The court pointed out that a person should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording in full living color and hi-fi to the public at large. A different rule could have a most pernicious effect upon the dignity of man.
We have considered other objections to the statute and find them without merit.
We have previously dissolved the temporary injunction. We now hold that the statute is constitutional in that it does not violate the First Amendment of the United States Constitution, nor is it vague, nor does it unlawfully chill First Amendment freedom.
The order of the trial court is quashed and the cause is remanded to the trial court for further proceedings consistent with these views.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.