# STATE OF FLORIDA v. JOHNSON

## Case No. 84-7776MM10

County Court, Broward County

October 4, 1984

### APPEARANCES OF COUNSEL

**Andrew Blasi**, State Attorney's Office, for plaintiff.
**Jerome M. Rosenblum** for defendant.

### OPINION OF THE COURT

STEVEN G. SHUTTER, County Judge.

### *AMENDED ORDER OF CLARIFICATION*

This cause came on to be heard upon the Defendant's Motion to

Suppress, and the Court having taken testimony and after hearing argument of counsel and otherwise being fully advised in the premises, the Court corrects its prior Order of Clarification dated August 23, 1984, as follows:

1. The Motion to Suppress the breathalyzer is denied on the basis of the United States Supreme Court decision in *California v. Trombetta*, 52 LW 477 (1984).

2. The Motion to Suppress statements, admissions and confessions at the roadside location is granted, since the Defendant was in custody and was not advised of his rights, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

3. The requirements of the 4th, 5th, 6th and 14th Amendments as well as F.S. 901.24 do not require the Miranda warnings for the administering of roadside tests nor for physical performance tests on video tape. The failure of the arresting officer to advise of the right to counsel or to remain silent do not effect the admissibility of these tests. Had the Defendant affirmatively requested to consult with an attorney, the police would have been required to allow the Defendant to contact an attorney. The evidence indicated he did not do so.

4. That in Paragraph 3 of the Order, dated August 23, 1984, the Court had denied the Defendant's Motion to Suppres Roadside Tests and Video Tape. The Court now vacates that part of the Order and grants the Defendant's Motion to Suppress Roadside Tests and Video Tape pursuant to Article I, Section 23 of the Florida Constitution which states in pertinent as follows:

"Every natural person has the right to be let alone and free from governmental intrusion into his private life, except as otherwise provided herein."

5. Although there is no explicit right to privacy set forth in the Federal Bill of Rights, the United States Supreme Court has construed the Federal Constitution to protect certain privacy interests. These protected interests can be said to compromise the Federal Constitutional Right of privacy. This general federal right of privacy has been characterized as consisting of three protected interests: an individual's interest in being secure from unwarranted governmental surveillance and intrusion into his private affairs; a persons' interest in decisional automony on personal intimate matters; and an individual's interest in protecting against the disclosure of personal matters. *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The protection of a person's general right of privacy, his right to be left alone is left to the

**117**

law of the individual states, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

6. The oldest and most widely understood of these privacy interests protected by the Federal Constitution is a person's interests in being secure against arbitrary governmental surveillance and intrusion into his private affairs. This privacy interest is rooted in the Fourth Amendment prohibition against unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States*, supra.

7. The second privacy interest which has gained Federal Constitutional recognition is the right of an individual to be free from unjustified governmental interference in making various types of important personal decisions. This interest has been characterized as the right of decisional automony and is protected from governmental regulation, absent a narrowly drawn legislative enactment based upon a compelling state interest. This particular privacy interest was first explicitly recognized in the decision of *Griswald v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965), and has its foundation in the 14th Amendment's "concept of liberty". *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

8. The remaining privacy interest applies to the facts of this particular case and that interest has been characterized as the individual's interest in avoiding public disclosure of personal matters. A fundamental aspect of personhood's integrity is the power to control what we shall reveal about our intimate selves, to whom and for what purpose. That is the implication of Article I, Section 23 which is directly concerned with involuntary disclosure.

9. In its 1977 decision of *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court recognized that "individual interest in avoiding disclosure of personal matters" is part of the privacy interest which is founded, as held in *Roe v. Wade*, in the 14th Amendment's concept of personal liberty. The Court quoted Professor Kurlands characterization of disclosural privacy as "the right of an individual not to have his private affairs made public by the government." Four months later, the Supreme Court decided the case of *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 876 (1977), and unequivocally held that former President Nixon was constitutionally protected in his "legitimate expectation of privacy," "in presidential papers and tapes" concerning "matters of personal life unrelated to any acts done in his public capacity".

118

10. The privacy issue is not entirely one of Federal Constitutional law. The Florida Constitution restates the fundamental guarantees of the United States Constitution which are associated with a right of privacy; the "inalienable rights" of persons including, the "right to enjoy and defend life and liberty," "to pursue happiness", to worship and speak freely, to secure against unreasonable searches and seizures, and to protection by due process against depravation of life and liberty. However, the Florida Constitution also contains, more directly than any clause of the United States Constitution, an explicit guarantee of the right of disclosural privacy. Article I, Section 23 provides an explicit right of privacy against Governmental intrusion into one's private life.

11. The Florida Supreme Court's decision in *Shevin v. Sunbeam Television Corp.*, 351 So.2d 723 (Fla. 1977) was concerned with a statutory, not a constitutional, claim of privacy. However, that decision similarly traces the right of disclosural privacy to its source in the essential integrity of personhood. The Court upheld against a First Amendment challenge, a Florida statute which required consent of all parties to a private interception of their communication. Thus, the Florida Constitution expresses the theme that disclosural privacy—the personal right of some control over the broadcast of intimate information concerning the self—is an aspect of personhood which is to be protected, as are others, as fundamental. This Court is bound to decide this case in light of that constitutional mandate.

12. An essential requisite of any constitutional claim of disclosural privacy is that the claimant have a "legitimate expectation of privacy" in the particular information or communication in danger of disclosure by State action. *Nixon v. Administrator of General Services*, supra.

13. In this case, the performance by the Defendant of certain roadside tests satisfies this requirement. Although the Defendant performed roadside tests, both on and off camera, the Defendant was never advised either out on the roadway, or prior to going under the camera, that he could not be compelled to perform roadside tests, nor could he be compelled to go under a video camera and that it was only voluntary. The officer never explained to the Defendant that the results of the roadside tests would be used against him in a criminal prosecution and that the evidence of same would be used by the finder of fact to determine whether or not he was guilty of a crime. The Defendant testified he did not understand, nor was he told that he did not have to go under the camera, or perform the roadside tests. As a matter of fundamental fairness, the Court rules that the roadside tests conducted

**119**

on the roadway, and later on at the BAT mobile shall not be used against the Defendant.

The performance by the Defendant of certain roadside tests does not alleviate his right of privacy, since "privacy is not just an absence of information about ourselves; it is a feeling of security and control over that information". That was the dispositive theme of the decisions in *Katz v. United States,* supra, and *Shevin v. Sunbeam Television Corp.,* supra, which held that an individual's selective disclosure of information to another, who might repeat it, does not of itself imply consent that the conversation be "broadcast to the world", or "transmitted by photograph, or recording in full living color and hi-fi to the public at large".

The Defendant's expectation of disclosural privacy is also reasonable by objective standards. The sole purpose of roadside sobriety testing is to acquire evidence of criminal conduct on the part of the accused. Moreover, the scope of the intrusion involved in the testing process cannot be characterized as anything less than substantial. When considered in terms of its intrusive potential, a roadside sobriety test is not far removed from chemical testing, pursuant to Implied Consent Statute. Indeed, in some respects, roadside sobriety testing might be considered more invasive of privacy interests than chemical testing. The latter is usually performed in the relatively obscured setting of a stationhouse, or hospital, while roadside sobriety testing often takes place on or near a public street where the suspect is exposed to the full view of motorists, pedestrians, or anyone else who happens to be in the area.

The Court agrees with the argument advanced by Defendant, that a roadside sobriety test involves an examination and evaluation of a persons' ability to perform a series of coordinative physical maneuvers not normally performed in public for the purpose of determining whether the person under observation is intoxicated. Since these maneuvers are those which the ordinary person seeks to preserve as private, and since the purpose of the testing is to acquire evidence of criminal conduct on the part of the accused, the Court agrees that there is a constitutionally protected privacy interest in the coordinative characteristics sought by the testing process. Accordingly, the Court grants the Motion to Suppress Roadside Tests which were performed by the Defendant at the time of the initial stop on the highway, as well as those roadside tests performed on the video tape, based upon the authority of Article I, Section 23 of the Florida Constitution.

## ORDER CERTIFYING QUESTION

This cause having come before the Court upon the stipulation of the

parties, and upon the independent review by this Court of its Amended Order of Clarification dated October 4, 1984, which granted the Defendant's Motion to Suppress, it is hereby

ORDERED AND ADJUDGED as follows:

1. The Court is of the opinion that the question and opinion contained in the Amended Order of Clarification (a copy of which is attached hereto and is incorporated by reference [see preceding order]) involve issues of statewide application, which are of great public importance and will affect the uniform administration of justice in this state.

2. This Court's Amended Order of Clarification logically would affect the future administration of all roadside tests to be given to individuals suspected of driving while intoxicated.

3. Accordingly, the Court hereby certifies to the Fourth District Court of Appeal that the question involved in the Amended Order of Clarification (which granted the Defendant's Motion to Suppress) has statewide application, is of great public importance, and will affect the uniform administration of justice.