498 So.2d 463 (1986)
Pedro R. PEREZ, Appellant,
v.
Mario ZAZO, Appellee.
No. 85-1844.
District Court of Appeal of Florida, Third District.
August 19, 1986.
Robert E. Austin, Jr. and Jerri Blair, Leesburg, for appellant.
DeMeo & Sherman and Thomas Sherman, Coral Gables, for appellee.
*464 Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
The defendant-landlord, Pedro Perez, appeals from an adverse jury verdict and judgment in a personal injury action arising from an incident in which his apartment manager, Rodriguez, deliberately stabbed the plaintiff, Mario Zazo, a tenant in the building. We reverse on the holding that the appellant's motions for directed verdict should have been granted because Rodriguez was, as a matter of law, not acting within the course and scope of his employment at the time.
Since Rodriguez did not testify, the only version of the incident presented to the jury was that of the only other participant, the plaintiff. According to his testimony  which, since the record must be viewed in the light most favorable to the verdict winner, would have to be accepted even if it were disputed  he arrived at his building one evening from work. He saw Rodriguez,[1] and, reflecting what was apparently a chronic complaint, "told him to put on the hot water." Rodriguez answered simply that he "would put it on now" and left. Zazo went into another tenant's apartment and was sitting having a beer when, without warning or explanation, Rodriguez came through the door and stabbed him in the back, stomach and face.[2] This evidence *465 was insufficient to support the judgment under review.
It is entirely clear that responsibility for the intentional wrongful acts of a servant-employee may be visited upon his master-employer under the doctrine of respondeat superior[3] only when that conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own. Stinson v. Prevatt, 84 Fla. 416, 94 So. 656 (1922); Williams v. Florida Realty & Management Co., 272 So.2d 176 (Fla.3d DCA 1973); Restatement (Second) of Agency § 235, at 520 (1958) ("An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed."). It is true that the relationship between the employee's wrong and the employer's interests found sufficient to warrant submitting the issue for jury determination seems, in some prior instances, to have been quite attenuated. See Colombia By The Sea, Inc. v. Petty, 157 So.2d 190 (Fla.2d DCA 1963) (restaurant's liability for assault by maitre d' on customer during extended attempt to make extra charge for roquefort dressing properly submitted to jury); Forster v. Red Top Sedan Service, Inc., 257 So.2d 95 (Fla.3d DCA 1972) (liability of bus company for driver's assault upon plaintiffs after forcing their vehicle off road because of belief they had delayed bus properly submitted to jury); Gonpere Corp. v. Rebull, 440 So.2d 1307, 1308 (Fla.3d DCA 1983) (apartment owner's liability for manager's shooting of tenants during argument over eviction properly submitted to jury; manager stated that he "told them to move and they didn't move"). In this instance, however, that connection is totally non-existent. We are simply unable to discern any indication whatever that any purpose of the apartment owner was being served or could have been intended by the then-silent and now-missing Rodriguez to have been served by the senseless, inexplicable act which injured Zazo. See Western Union Telegraph Co. v. Hill, 67 F.2d 487 (5th Cir.1933); DeJesus v. Jefferson Stores, Inc., 383 So.2d 274 (Fla. 3d DCA 1980); Nettles v. Thornton, 198 So.2d 44 (Fla. 1st DCA 1967).
The only aspect of Rodriguez's job which the appellee even contends may have been implicated by the stabbing was his asserted responsibility to "handle" tenants' complaints about the premises. But even making the quite speculative assumption that Rodriguez was angrily responding to the plaintiff's request for hot water, it can hardly have furthered the employer's interests  as opposed to some activity in actually dealing with the subject of the complaint or in mollifying the complainer  to attempt to do away with the tenant entirely. Instead, the stabbing must be viewed as motivated by Rodriguez's personal anger and resentment alone. In this regard, it is clear that the fact that the source and subject matter of what Rodriguez "took personally" was related to his work  that he got made over something on his job  does not mean that his reaction was. Two decisions in particular support our conclusion to this effect. In Reina v. Metropolitan Dade County, 285 So.2d 648 (Fla.3d DCA 1973), cert. discharged, 304 So.2d 101 (Fla. 1974), after a heated disagreement with the driver over a bus fare, the passenger alighted, reached the sidewalk and flashed an obscene gesture from there at the driver. The latter responded to the *466 insult by stopping and getting off the bus and physically attacking his tormentor. This court held the assault and battery beyond the driver's scope of employment as a matter of law. We distinguished the Forster case, supra, upon which the appellee heavily relies, on the ground that
in the cited case the conduct on the part of the injured party, which was impeding the progress of the bus towards the beach, was likely to continue as the bus proceeded down the expressway. The facts in the instant case are just the opposite. The passenger had alighted the bus and was across the street when he was attacked. His conduct would not have impeded the progress of the bus as it continued on its route. We believe the trial judge was correct in the entry of his order directing a verdict for the County.
Reina, 285 So.2d at 649. In the even more factually similar case of Trebitsch v. Goelet Leasing Co., 226 A.D. 567, 235 N.Y.S. 426 (1929), aff'd, 252 N.Y. 554, 170 N.E. 140 (1929), the plaintiff was a tenant in the defendant's apartment building. It was the duty of the night elevator man in the apartment house to distribute newspapers each morning to the tenants. One morning, the plaintiff complained that his newspaper had not been delivered. During a dispute over the matter, the elevator man assaulted and struck the plaintiff. The court held the owner not liable as a matter of law because the assault was not committed in the interest of the employer. In this case, as in Reina and Trebitsch, there is nothing to show that the tortious acts could have benefited the tort-feasor's employer; thus, as these decisions demonstrate, it makes no difference that they stemmed from or arose during the employment. In sum, the assault was plainly "neither activated by a purpose to serve the master nor related in any way to the furtherance of [his] business." DeJesus v. Jefferson Stores, Inc., 383 So.2d at 274. As in many similar cases, it must therefore be concluded that the employer is not liable as a matter of law. City of Green Cove Springs v. Donaldson, 348 F.2d 197 (5th Cir.1965); Western Union Telegraph Co. v. Hill, 67 F.2d 487; Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986); Friedman v. Mutual Broadcasting System, 380 So.2d 1313 (Fla.3d DCA 1980), cert. denied, 388 So.2d 1112 (Fla. 1980); Jones v. City of Hialeah, 368 So.2d 398 (Fla.3d DCA 1979), cert. denied, 378 So.2d 346 (Fla. 1979); Nettles v. Thornton, 198 So.2d 44. Accordingly, the judgment below is reversed for entry of judgment in favor of Perez.
Reversed.
NOTES
[1] The appellant claims that he employed only Rodriguez's wife, not Rodriguez himself, as the building manager and that he was therefore not liable, as a matter of law, for any of Rodriguez's acts. We find ample evidence, however, to support the resolution of this issue against the defendant and therefore find this position without merit. Accordingly, this opinion assumes Rodriguez's status as an employee of Perez.
[2] Zazo's testimony on the circumstances of his injury, in full, was as follows:

Q. If you had a complaint about something that was wrong with your apartment, who would you go to?
A. To him, to Rodriguez.
* * * * * *
Q. Now, on the night of March 24, 1984, tell us what happened in reference to the event leading up to your being stabbed.
A. March 23rd, around 7:30 in the evening, I arrived home and I took off my shirt and my chains and Rodriguez passed by and so I told him to put on the hot water.
I left  I sat at Pastora's doorstep in the inside portion of Pastora's house.
Q. Wait one second.
What kind of problem were you having that night with your hot water?
A. There was no hot water. There was no hot water over there. There was never any hot water.
Q. Why did you tell Rodriguez to put on the hot water; who is he?
A. Because he is the manager.
Q. Okay.
When you told him to put on the hot water, what did he say to you?
A. I stayed sitting down at Pastora's door and he went down to his house to get a knife.
Q. Before Rodriguez left to go get the knife, as you say, was there any argument between you and he?
A. We didn't argue about anything.
Q. What did he say to you when you told him you needed hot water?
A. "I would put it on now."
He came with a knife and he stabbed me in my back.
Q. What were you doing before he stabbed you?
A. I was having a beer.
Q. Were you sitting in a chair? Were you standing? How were you positioned?
A. I was sitting in a chair in Pastora Ortega's house.
Q. Was your back to the door or were you facing the door?
A. Back to the door.
Q. Was Pastora Ortega there?
A. Pastora had left to the market and his wife was making coffee.
Q. Okay.
And as you were sitting there in the chair, were you watching television or what were you doing?
A. I was watching television because his wife had told me, "Check the coffee for me because I'm going to the bathroom."
Q. And what happened when Rodriguez came back?
A. He stabbed me three times.
Q. Okay.
The first time he stabbed you, where did he stabbed you?
A. Around the kidneys, around the lungs, around here.
Q. Did he say anything to you before he stabbed you?
A. Nothing. We had no argument about anything.
Q. I'm sorry.
Did you say anything to him?
A. No.
Q. Okay.
After he stabbed you in the back, as you were sitting in the chair, then what happened?
A. I went inside Pastora's house and I took hold of a chair in order to swerve it.
Q. And why did you do that?
A. Because I am inside the house and he went inside the house to stab me.
Q. Okay.
And did he stab you again at that point?
A. Then, he stabbed me in the stomach and once in the face, once in the face.
* * * * * *
Q. Okay.
And what happened after he stabbed you three times; did he leave? Did he stay?
A. No, he ran off.
[3] This is the only theory upon which the plaintiff relies. He withdrew his allegation and produced no evidence that Rodriguez had been negligently hired. See Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986).