896 So.2d 855 (2005)
Ivan CANAVERAS and Nancy Canaveras, Appellants/Cross-appellees,
v.
The CONTINENTAL GROUP, LTD., etc., and Lubier Jaramillo, Appellees,
The Continental Group, Ltd., etc., Appellee/Cross-appellant.
No. 3D03-3326.
District Court of Appeal of Florida, Third District.
February 23, 2005.
*856 Bambi G. Blum, Miami; William R. Jones, III, for appellants/cross-appellees.
Angones, McClure & Garcia and Francisco R. Angones, Miami; Hunter, Williams & Lynch and Christopher J. Lynch, for appellees/cross-appellant.
Before COPE, WELLS, and SHEPHERD, JJ.
WELLS, Judge.
Ivan Canaveras, the victim in a workplace altercation, appeals the dismissal of his personal injury claim against Lubier Jaramillo, the aggressor in the incident, and the Continental Group, Ltd., Jaramillo's employer.[1] The trial court dismissed the claim with prejudice for fraud upon the court, after concluding that Canaveras had attempted to hide a prior injury. Continental cross appeals an order denying its motion for directed verdict in which it claimed that Jaramillo was acting outside the scope of his employment in attacking Canaveras. We reverse the dismissal order and affirm the order denying Continental's motion for directed verdict.
In his complaint, Canaveras alleged that he had sustained physical and emotional injury as the result of an attack by Jaramillo, who was employed by Continental as chief engineer at the Mirage, the condominium where Canaveras worked as a valet.[2] Jaramillo had accused Canaveras of stealing a tip from a fellow valet and had struck Canaveras in the face. Jaramillo did not dispute that he had hit Canaveras.
Early in the action, Canaveras disclosed that he had been struck in the face during an attack many years earlier:
Q: Prior to Mr. Jaramillo striking you, had you ever had any eye problems before?
A. Like 15 years ago.
Q. Tell me about that.
A. I received a
I was struck at in a holdup.
Canaveras went on to explain that he had been treated at both Mount Sinai Hospital and Bascom Palmer Eye Institute following the "holdup." Continental's attorney subsequently obtained copies of Canaveras' medical records relating to this incident, and provided them to a physician who conducted Canaveras' independent *857 medical evaluation. That physician noted in his report that Canaveras "was assaulted in 6/90 and . . . had a left ethmoid fracture, left forehead laceration and right paranasal sinus opacification. [He] . . . also had traumatic iritis at that time. According to the records, the patient denied any visual disturbance following the initial trauma in 6/90."
A little over three years after the first deposition, Canaveras was deposed a second time, this time by Jaramillo who had just been joined as a defendant in the action. Canaveras' counsel announced at the start of this deposition that he would not permit a "rehash" of Canaveras' prior testimony, although he agreed that Jaramillo's attorney could question on points he wanted to "develop into more detail." Jaramillo's attorney, who admitted on the record that he had read Canaveras' first deposition, did not attempt to delve into the details of the 1990 holdup, any injuries Canaveras sustained during that incident, or the treatment he received. He opted instead for asking Canaveras general questions about whether Canaveras had seen an eye doctor before this incident and prior eye injuries. Canaveras responded to the inquiry about seeing an eye doctor in a manner consistent with his response to a similar interrogatory, stating that he had seen an eye doctor to obtain reading glasses. He denied any prior eye injuries, again responding consistently with his medical records which confirmed that following the initial trauma sustained in the hold up he "denied any visual disturbance."[3]
On the morning of trial, September 15, 2003, Continental and Jaramillo sought dismissal, claiming that Canaveras had attempted to defraud the court by lying about his medical history. The court deferred ruling until the conclusion of the Canaveras' case at which time the motion to dismiss was granted. At the same time, the court denied Continental's motion for directed verdict which claimed that Jaramillo was acting outside the scope of his employment when he struck Canaveras.
We reverse the dismissal order. Because "dismissal with prejudice for fraud on the court is such an extreme remedy, the fraud must be demonstrated by clear and convincing evidence." See Arzuman v. Saud, 843 So.2d 950, 952 (Fla. 4th DCA 2003). As Arzuman observed, "[t]he requisite fraud on the court occurs where `it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.'" Id. (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)). Because "dismissal sounds `the death knell of the lawsuit,'. . courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Aoude, 892 F.2d at 1118 (citation omitted). A review of the record demonstrates that Canaveras informed opposing counsel of the prior incident and the treatment he received as a consequence early on and that Canaveras' medical history stemming from that incident was known and investigated by the defendants. Under the circumstances, we cannot agree that dismissal was warranted.
*858 As to the cross appeal of the order denying the motion for directed verdict on the claim that Jaramillo was acting outside the scope of his employment at the time of the attack, we affirm. Where, as here, there is conflicting evidence on the issue of whether an employee is acting within the scope of employment, a jury question is presented. See Montadas v. Dade Scrap Iron and Metal, Inc., 666 So.2d 1054, 1055 (Fla. 3d DCA 1996)(material issue of fact as to whether employee who allegedly attacked pizza deliveryman concerning a late delivery was acting in furtherance of perceived business interest in ensuring that workers' time away from their jobs was not unnecessarily wasted precluded summary judgment for employer with respect to pizza deliveryman's personal injury action); Woods v. City of Miami, 646 So.2d 836 (Fla. 3d DCA 1994)(observing that whether an employee's acts have been committed within scope of his employment or in furtherance of his employer's interest is generally a question for the jury when there are varying inferences and conclusions that may be drawn); Rivas v. Nationwide Personal Sec. Corp., 559 So.2d 668 (Fla. 3d DCA 1990)(jury's determination that assault upon cashier arose out of job dispute and was therefore within scope of employment, so that employer could be held liable for assault, was supported by evidence); Gonpere Corp. v. Rebull, 440 So.2d 1307 (Fla. 3d DCA 1983) (question of whether manager's act was committed within scope of his employment or in furtherance of owner-employer's interest, and question of whether employer could have anticipated manager's conduct, were for jury); Columbia By the Sea, Inc. v. Petty, 157 So.2d 190 (Fla. 2d DCA 1963)(whether maitre d' acted within scope of his employment when he struck patron with an ash tray was a question for jury under the conflicting evidence).[4]
As the order under review indicates, Jaramillo was responsible for making sure the condominium was running properly. He also served as Continental's property manager's "right hand man," and from time to time "instructed various employees on issues relating to the property." Jaramillo also testified that at least in approaching Canaveras, he thought that he was acting on Continental's behalf:
Q: And you accept responsibility for what occurred do you not?
A: It is my responsibility to protect the property. It comes down to my responsibility.
* * *
Q: And just so its crystal clear . . . you believe that you were doing your job to stop-to tell Mr. Canaveras to stop it with the tips, correct?
A: Yes. That is correct.
Thus, as the trial court observed "[p]laintiffs have presented enough evidence for the jury to conclude that Jaramillo was acting within what he perceived to be the scope of his employment when he approached Canaveras concerning the tip."
Accordingly, the order of dismissal is reversed; the order denying defendant's motion for a directed verdict is affirmed.
NOTES
[1] Canaveras' spouse, Nancy, was also a named plaintiff.
[2] The Mirage contracted with Continental to manage and oversee the condominium. Kent Security, Canaveras' employer, provided valet services to the condominium. As the final judgment observed, "[w]hile Continental was not directly responsible for Kent employees, Continental did play an overall supervisory role in making sure that all service providers on the property worked together to make sure the residents of the condominium were well served."
[3] Canaveras testified at trial that following the 1990 holdup he went to Bascom Palmer two or three times and was told that "this was nothing, it would just heal . . . and that's it." He also testified that he had no further treatment or follow up and that he sustained no vision impairment or loss.
[4] But see Perez v. Zazo, 498 So.2d 463 (Fla. 3d DCA 1986) (holding that landlord was not liable for manager's stabbing of tenant, even if manager was angrily responding to tenant's earlier request for hot water when he stabbed tenant).