969 So.2d 412 (2007)
Faith O. HORNING-KEATING, Appellant/Cross-Appellee,
v.
EMPLOYERS INSURANCE OF WAUSAU, etc., et al.
Nos. 5D05-3903, 5D06-184, 5D06-314.
District Court of Appeal of Florida, Fifth District.
October 26, 2007.
Rehearing Denied December 3, 2007.
*414 Wayne Johnson, of DeCiccio & Johnson, Winter Park, for Appellant/Cross-Appellee.
Nina K. Brown and Antonio D. Morin of Akerman Senterfitt, Miami, for Appellee/Cross-Appellant Employers Insurance of Wausau.
Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Appellees/Cross-Appellants Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A.
Robert E. Mansbach, Jr., E. Ginnette Childs of Zimmerman, Kiser & Sutcliffe, P.A., Orlando, for Appellees/Cross-Appellants Mark Spangler, P.A., Spangler, Mace & Zinaich, P.A., and Mark Spangler.
PALMER, C.J.
Faith O. Horning-Keating (Keating) appeals the final summary judgment entered by the trial court in favor of Mark Spangler (Spangler), Employer's Insurance of Wausau (Wausau), and the law firm of *415 Rissman, Weisberg, Barrett, Hurt, Donahue and McLain, P.A. (Rissman). Determining that there are material issues of fact in dispute as to one count of Keating's complaint, we reverse in part.
The matters at issue in this case have a long history, beginning in 1991, when Keating's client, Barney Dreggors, filed a claim for workers' compensation benefits against his employer's insurer, Wausau. At the hearing regarding Dreggors' entitlement to receive benefits, Keating represented Dreggors. Spangler, an employee of the Rissman firm, represented Wausau.
Upon review of the evidence presented, the judge of compensation claims (JCC) found in favor of Dreggors and awarded him, among other things, attendant care benefits. The JCC based the benefits award upon the testimony of doctors who stated that Dreggors needed 24-hour supervision because of memory loss and cognitive and neurological deficits resulting from his head injury.
Of importance to this appeal, the workers' compensation award included reimbursement to Dreggors for 12 hours a day of family attendant care and an additional 12 hours a day of non-family attendant care. The order indicated that Kerry Dreggors (Barney Dreggors' wife) had hired Louise Rothstein as the non-family attendant. However, the order awarding attendant care benefits did not mention that Rothstein was specifically entitled to be paid for the care. Instead, the order stated generally that attendant care benefits could be paid according to a certain calculation. Also, the JCC noted, in correspondence with the parties, that Spangler and Wausau hid behind "a wall of willful ignorance" regarding Wausau's refusal to pay attendant care benefits to Dreggors. The JCC also characterized Spangler's conduct in handling the case as reprehensible, insufficient, and shameful. Wausau appealed the JCC's decision to the First District Court of Appeal, which affirmed the JCC's decision.
The instant litigation began when Keating filed a complaint against Rothstein, Wausau, Rissman, and Spangler. The complaint set forth causes of action for invasion of privacy and violation of Florida's Security of Communications Act.[1] In her complaint, Keating set forth the following allegations.
First, Keating's complaint alleged that, upon receipt of the decision from the First District Court of Appeal, Spangler made a decision to have Wausau issue a check to Rothstein for non-family attendant care benefits in an attempt to entrap the Dreggors and/or Keating because he believed they were guilty of committing insurance fraud. In furtherance of that plan, Spangler directed Wausau to issue a check to Rothstein in care of Keating for the sum of $51,900. Since Rothstein was no longer living with the Dreggors, Spangler hired a private investigator, Joel Smith, to find Rothstein. When Smith found Rothstein, he showed her a copy of the Wausau check and told her that if she cashed the check and had not provided any attendant care to Barney Dreggors, she would be guilty of committing insurance fraud. When Rothstein became hysterical in response to that information, Smith advised her to call Spangler. Spangler directed Rothstein to come to his office to give a sworn statement that she did not provide attendant care for Dreggors. After Rothstein provided her statement, Spangler notified the Florida Department of Insurance, Division of Insurance Fraud, that the Dreggors and Keating were engaged in insurance fraud.
*416 The complaint further alleged that, subsequently, the Wausau check for $51,900 in attendant care benefits was sent to Keating, who notified the Dreggors that Wausau had issued an attendant care benefit check payable to Rothstein for the time she lived with the Dreggors. The Dreggors met with Rothstein at least two times to confer about the check and they advised Rothstein to meet with Keating to discuss the issue. Rothstein secretly tape-recorded one of her meetings with the Dreggors.
Before meeting with Keating, Rothstein met with Spangler. During her meeting with Spangler, Rothstein requested a "get out of jail free" letter which could be used in the event she later signed the check for attendant care benefits. Spangler provided Rothstein with a letter stating that she would not be prosecuted if she signed the check during her meeting with Keating. Rothstein told Spangler she intended to secretly tape record her meeting with Keating. Rothstein then met with Keating and secretly tape-recorded the meeting, but did not endorse the check (nor was it ever cashed).[2] After Rothstein left her meeting with Keating, she met with Spangler, who listened to the tape recording of the meeting. Spangler then again contacted the Division of Insurance Fraud.
By that time, Agent David Locker had been assigned to the case. Spangler and Rothstein went to Locker's office to play the tape of Rothstein's meeting with Keating for him. Locker took the case to the Office of the Statewide Prosecutor. Spangler also contacted Channel 9 News alleging that the Dreggors and Keating had fraudulently obtained workers' compensation benefits and were being charged by the Office of Statewide Prosecutor. After the prosecutor completed his investigation, the criminal case proceeded against Kerry Dreggors only. At the conclusion of the trial, the jury acquitted Kerry Dreggors on all charges.
In asserting claims for invasion of privacy and for violation of Florida's Security of Communications Act, Keating's complaint cited to Rothstein's act of secretly tape recording her meeting in Keating's office.
Spangler, Wausau and Rissman all filed answers to Keating's complaint generally denying liability. Thereafter, following discovery, Rissman filed a motion for summary judgment claiming that judgment should be entered in its favor on Keating's section 934.03 claim because Spangler had no duty to prevent Rothstein from committing the criminal act of tape recording the conversation in Keating's office. Additionally, Rissman argued that judgment should be entered in its favor on Keating's invasion of privacy claim because Keating had no expectation of privacy in her business office which Rothstein was invited into with Keating's knowledge and consent.
Spangler filed a separate motion seeking summary judgment claiming: (1) the undisputed facts demonstrated that he did not direct, participate in, or procure Rothstein to tape record the meeting at Keating's office; (2) Keating's invasion of privacy claim was barred by the statute of limitations; (3) he was immune from liability under section 440.105 of the Florida Statutes for reporting evidence of suspected insurance fraud;[3] (4) he had a good *417 faith belief under section 934.10(2) of the Florida Statutes that the tape recording was permitted by law; (5) he had no duty to prevent a third person from committing an allegedly criminal act or to warn the alleged victim of the act; and, (6) Keating did not have a legitimate expectation of privacy regarding persons in her business office with her knowledge and consent.
Wausau also filed a motion seeking summary judgment claiming that the undisputed material facts demonstrated that Wausau had no liability under Florida's Security of Communications Act or for common law invasion of privacy as a result of the secret tape recordings made by Rothstein of the meeting in Keating's office because: (1) it could not be held responsible for Spangler's actions in this matter; (2) Spangler had no duty to prevent Rothstein from tape recording Keating's conversation; (3) Keating could not sustain a claim for violation of the Security of Communications Act or invasion of privacy when there was no objectively reasonable expectation of privacy in a business office under Florida law; and, (4) Keating's claim for invasion of privacy was barred by the statute of limitations.
After conducting various hearings, the trial court entered a written order fully granting the motions for final summary judgment filed by Spangler, Rissman and Wausau. The trial court found as follows regarding Keating's claims:
Count I: Invasion of privacy
The statute of limitations barred Keating's claims for invasion of privacy.
Count II: Security of Communications Act
A. Intercepting Communications
Spangler did not procure Rothstein to intercept communications because Spangler did not actively encourage or instruct Rothstein to record the conversations or how to record the conversations. Rothstein's deposition confirmed that it was her idea to record the conversations and she was not coerced into the situation. Further, the equipment used to record the conversations belonged to Rothstein, as well as the tapes, which she maintained control of until a subpoena removed them from her possession. Spangler merely listened to the tapes with Rothstein, he did not copy or transcribe them.
B. Disclosing Intercepted Communications
Spangler could not have procured Rothstein for the purpose of disclosing illegal tapes to the Department of Insurance because Spangler disclosed the involvement of Rothstein to the fraud investigator, Locker, on April 11, 1997, which was prior to the creation of the tapes. Further, even if Spangler had informed Locker of the existence of the tapes, there was no evidence showing that Spangler knowingly disclosed to Locker the contents of the tapes.
Count III: Immunity under sections 440.105 and 440.1051 of the Florida Statutes
Spangler was immune from liability because even if he disclosed the existence of the tape to the Division of Insurance Fraud, this conduct would be protected under section 440.105(1)(b) because it was in furtherance of the reporting requirement of the statute. Because the claims against Wausau rest on Spangler's actions and Spangler would be immune for reporting information, Wausau would also be immune from liability.
Further, there was no evidence that Spangler acted in bad faith in making *418 a report to the Department of Insurance.
Subsequently, the trial court issued a final summary judgment in favor of all defendants except Rothstein on all of Keating's claims.
Keating challenges the trial court's final summary judgment, claiming the record contains genuine issues of material fact which warrant the case being submitted to the jury.
On a motion for summary judgment, unless and until material facts at issue presented to the trial court are so crystallized, conclusive, and compelling as to leave nothing for the court's determination but questions of law, those facts, as well as any defenses, must be submitted to jury for its resolution. Hastings v. Demming, 682 So.2d 1107 (Fla. 2d DCA 1996). The presumption of correctness generally applicable to all orders subject to appellate review is relatively weak in review of a summary judgment because the appellate court is in no less of a position than the trial court in reviewing documentary evidence. Maynard v. Household Finance Corp. III, 861 So.2d 1204 (Fla. 2d DCA 2003).
Keating first argues that the trial court erred by ruling that her claims for invasion of privacy were barred by the statute of limitations. We disagree.
Keating filed her initial complaint on January 17, 2002, alleging that the invasion of her privacy specifically occurred on April 18, 1997, when Rothstein secretly tape recorded the meeting between herself, Keating, and the Dreggors. Applying the applicable four year statute of limitations, the limitation period expired in April 2001, months before Keating filed her complaint. See Haskins v. City of Ft. Lauderdale, 898 So.2d 1120 (Fla. 4th DCA 2005); Heekin v. CBS Broadcasting, Inc., 789 So.2d 355 (Fla. 2d DCA 2001). Notably, Keating failed to allege in her complaint that her privacy was invaded each time Spangler presented evidence of the taping to different individuals over the course of this case. Compare Baucom v. Haverty, 805 So.2d 959 (Fla. 2d DCA 2001).[4]
Keating also argues that the trial court erred in entering summary judgment on her section 934.01 claim regarding the issue of whether Spangler procured Rothstein's illegal taping. We disagree. The undisputed evidence shows that Rothstein made the decision unilaterally to record her meeting with Keating. As a matter of law, the fact that Spangler did not stop Rothstein from taping the conversation does not constitute procurement of the taping.
Keating further argues that the trial court erred in granting summary judgment *419 on the issue of whether Spangler improperly disclosed or used the contents of Rothstein's illegally obtained tapes. We agree.
Section 934.03(1)(c) and (d) of the Florida Statutes (1995), sets forth criminal penalties for any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." The statute further provides criminal penalties for any person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." See § 934.03(1)(c) & (d), Fla. Stat. (1995).
The evidence of record reveals that a question of material fact exists as to whether Spangler disclosed or used Rothstein's tapes such that summary judgment should not have been granted on this issue. Specifically, a reasonable jury could conclude that Spangler disclosed or used the tapes based on the following facts: (1) Spangler played the tape that Rothstein made of the meeting and attempted to copy/transcribe it; (2) Spangler took Rothstein to a meeting with Locker to play the tape; and, (3) the tape was played in his presence for Locker, who testified that the tape played a role in filing a charging affidavit against Keating.
Keating next argues that the trial court erred in ruling that Spangler was entitled to an immunity defense for reporting workers' compensation fraud. We again agree.
Section 440.105(1) of the Florida Statutes (1995) provides as follows:
440.105. Prohibited activities; reports; penalties; limitations
(1)(a) Any insurance carrier, any individual self-insured, any commercial or group self-insurance fund, any professional practitioner licensed or regulated by the Department of Health, except as otherwise provided by law, any medical review committee as defined in s. 766.101, any private medical review committee, and any insurer, agent, or other person licensed under the insurance code, or any employee thereof, having knowledge or who believes that a fraudulent act or any other act or practice which, upon conviction, constitutes a felony or misdemeanor under this chapter is being or has been committed shall send to the Division of Insurance Fraud, Bureau of Workers' Compensation Fraud, a report or information pertinent to such knowledge or belief and such additional information relative thereto as the bureau may require. . . .
(b) In the absence of fraud or bad faith, a person is not subject to civil liability for libel, slander, or any other relevant tort by virtue of filing reports, without malice, or furnishing other information, without malice, required by this section or required by the bureau, and no civil cause of action of any nature shall arise against such person. . . .
§ 440.105(1), Fla. Stat. (1995)(emphasis added).
The trial court noted that Spangler was protected from civil liability provided that his reports to the Department of Insurance were made in good faith. The trial court then concluded that Spangler's reports to the Department of Insurance were not made in bad faith because Rothstein informed Spangler that she had not provided attendant care for Barney Dreggors, and Kerry Dreggors had testified at the *420 compensation claim hearing that Rothstein had provided such care. However, disputed issues of material fact exist as to whether Spangler acted in good faith given the following facts in the record: (1) Spangler instigated the investigation; (2) Spangler directed Wausau to issue a check for attendant care benefits for Rothstein without anyone requesting such a payment; (3) Spangler sent an investigator to find Rothstein, show her the check, inform her that she would be guilty of insurance fraud if she signed the check, and frighten her into cooperating with his plan; (4) Spangler gave Rothstein a letter indicating that she would not be prosecuted if she signed the benefit check while at Keating's office; and, (5) Spangler took Rothstein to the meeting with Locker to play the illegal tape (which played a role in the filing of the charging affidavit).
As for her claims against Wausau under Florida's Security of Communications Act, Keating argues that material issues of fact exist as to whether Spangler was acting as an agent for Wausau in an attempt to prosecute Keating for insurance fraud. Wausau admits that the trial court did not address the question of whether Wausau could be held vicariously liable for Spangler's acts regarding Rothstein's taping of the conversation in Keating's office. Nevertheless, Wausau argues that it cannot be held vicariously liable for Spangler's actions and summary judgment for Wausau should be affirmed.
Review of the record reveals that issues of fact regarding whether Spangler was acting as Wausau's agent exist. The following evidence supports Keating's claim of liability against Wausau:
Spangler's deposition of March 22, 2000:
Spangler believed, in his role as an attorney for Wausau, that Wausau's position was that Dreggors did not need attendant care and was never actually provided attendant care.
Investigator Joel Smith's deposition:
Smith stated that he was going to bill Wausau for his time going to the deposition.
Spangler's deposition of May 7, 2004:
Spangler stated that he was acting as an attorney for Wausau when he reported the fraud to Statewide Prosecutor Robert Finkbeiner. He also stated that the first time he made a written formal request for the Department of Insurance to investigate the Dreggors' case, he was acting on behalf of Wausau. Wausau was copied and billed for all of the letters that Spangler wrote to the Fraud Division. Spangler admitted that he wrote to Finkbeiner requesting that the Fraud Division open up an investigation on this matter. Spangler admitted that he was acting as a representative of Wausau Insurance. Spangler copied Talmadge at Wausau with this letter. Spangler requested that the statewide prosecutor, Finkbeiner, file charges against Barney and Kerry Dreggors. Spangler told Finkbeiner that it was extremely important to Wausau to have the charges filed because they were seeking to have Judge Hoch's (the JCC) original award letter overturned. Spangler stated that he kept Wausau informed of the developments in the case as it proceeded. Spangler admitted that he billed Wausau for all his appearances in the criminal case against Kerry Dreggors and in several other spin-off cases related to the Dreggors.
Spangler's deposition of May 9, 2005:
Spangler stated that Wausau authorized him to conduct surveillance of Rothstein and Keating on April 10, 15, and 18 of 1997.
Finkbeiner's deposition:

*421 Finkbeiner testified that Spangler, as an agent of Wausau, voluntarily provided him with evidence for the prosecution. Finkbeiner stated that Spangler told him that Wausau viewed this as an important case and would provide any and all cooperation and support (investigatory, financial, or otherwise) to assist in the prosecution. Finkbeiner stated that Wausau may have paid to have the tapes electronically enhanced by NASA, but he wasn't sure. Wausau paid for an expert physician to testify at Kerry Dreggor's trial.
Additionally, Spangler wrote the following letter to Carl Talmadge, the Wausau insurance adjuster, informing Talmadge that he needed to issue a second check to Keating:
[Keating] is returning the check previously issued for $51,900 and she is requesting another check made payable to the claimant and her for the attendant care provider by non-family members. I believe we should go ahead and issue a replacement check in the same amount made payable to the claimant and claimant's attorney that she will be responsible for directly paying the providers. If claimant's attorney deposits these funds, I believe it is very probable that this would be a criminal act in furtherance of insurance fraud when she had actual knowledge that Ms. Rothstein did not provide any attendant care. Please contact me upon receipt of this letter so we may discuss our strategy in this very important case.
Based on the evidence in the record, there is a question of fact regarding what the scope of Spangler's authority was regarding his investigation of this matter. See M.S. v. Nova Southeastern University, Inc., 881 So.2d 614 (Fla. 4th DCA 2004)(holding agency status is a question of fact, except in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts); Sears Roebuck and Co. v. Williams, 877 So.2d 5 (Fla. 3d DCA 2004)(holding the question of agency and/or apparent agency is generally a question of fact which must be determined by a jury).
Similarly, Keating argues that the trial court erred in entering summary judgment in favor of Rissman on her claims that Rissman is liable under Florida's Security of Communications Act for Spangler's actions under the theory of respondeant superior up until the time he left Rissman's employment in November of 1997. Rissman ignores this argument on appeal and, instead, answers that Rissman is not liable because Keating cannot prove that Spangler procured Rothstein to tape the meeting. We conclude that, like the question of whether Spangler was acting as an agent of Wausau, the question of whether Spangler was acting within the scope of his employment with Rissman when he instigated the investigation against Keating and the Dreggors is a question for a jury to decide. See Canaveras v. Continental Group, Ltd., 896 So.2d 855 (Fla. 3d DCA 2005)(holding where there is conflicting evidence on the issue of whether an employee is acting within the scope of employment, a jury question is presented).
Based upon the reversal set forth herein, we reverse the cost judgment entered against Keating on behalf of the defendants. In addition, the cross-appeal filed by Wausau is rendered moot.
AFFIRMED in part, REVERSED in part, and REMANDED.
THOMPSON and LAWSON, JJ., concur.
NOTES
[1] See § 934.01 et seq., Fla. Stat. (1995).
[2] After the meeting, Keating wrote a letter to Spangler requesting that the check be reissued in the Dreggors' name. Wausau reissued the check but neither Keating nor the Dreggors ever cashed it. Eventually, Keating sent the check back to Spangler telling him that she could not accept a check for attendant care services because the Dreggors had not kept good records.
[3] Section 440.105 of the Florida Statutes (1995) provides immunity for individuals who, in good faith, report insurance fraud.
[4] With regard to the appellees' argument that entry of summary judgment on Keating's invasion of privacy claim was warranted on the theory that Keating possessed no expectation of privacy in her office as to persons invited therein, the case law is to the contrary. In Guilder v. State, 899 So.2d 412 (Fla. 4th DCA 2005), the court held that tape recording of a face-to-face conversation in which one is participating, without prior consent from all participants, constitutes an unlawful interception of an oral communication. Similarly, in Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla.1977), the supreme court expressed its belief that recording a conversation in which one is a participant constituted intercepting a conversation and noted that there was a policy decision by the Florida legislature to allow each party to a conversation to "have an expectation of privacy from interception by another party to the conversation." Id. at 727. In State v. Tsavaris, 394 So.2d 418 (Fla.1981), receded from on other grounds, Dean v. State, 478 So.2d 38 (Fla.1985), the supreme court answered in the affirmative the following certified question: "Does the recording of a conversation by one of the participants constitute the interception of a wire or oral communication within the meaning of Chapter 934, Florida Statutes (1979)?"